IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00061-CR

 

Emily Hardy and Hiram K. Myers,

                                                                                    Appellants

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the County Court at Law No.
1

McLennan County, Texas

Trial Court No. 20062174CR2 and
20062221CR1

 



O p i n i o n



 

Appellants Emily Hardy and Hiram Myers engaged in
an anti-war protest near President George W. Bush’s ranch that included
erecting a small tent in an off-road bar ditch.  After disobeying an officer’s
order to move and remove the tent, both were arrested and convicted[1]
under Texas Penal Code section 42.03,[2]
which prohibits the obstruction of a highway or passageway and the disobedience
of an order to move or remove an obstruction.  Hardy and Myers complain of the
legal sufficiency of the evidence supporting the conviction, as well as the
constitutional application of the statute.  Because we hold that the evidence
is legally insufficient to support Hardy’s and Myers’s convictions, we will
reverse and render judgments of acquittal.

Background

In 2005, Cindy Sheehan began a protest of the Iraq war in Crawford, Texas, home of President George W. Bush’s ranch.  This protest attracted
hundreds of protesters and media from around the world.  As the protest was
being organized, protest leaders worked with the McLennan County Sheriff’s Department
to ensure that the protest was organized and that the protesters were not
violating any laws.  Captain Kenneth Vanek, a sheriff’s deputy, met with the
marchers and gave them rules to follow concerning staying out of the roadway. 
Because marchers kept getting into the road, Captain Vanek suggested that they
move to a triangle of land created by the intersection of three roads: Morgan Road on the west, Prairie Chapel Road running southeast, and an unnamed road to the south. 
This area was coined “Camp Casey I.”[3]

There, Sheehan set up a small tent to spend the
night in until the President would agree to meet with her.  As the number of
protesters began to swell to around 700 people, neighbors began complaining,
and Captain Vanek told the protesters that they could stay in the ditches
beside the road but they could not obstruct traffic.  The protesters cooperated
with the deputies in keeping the roads clear.  However, the number of
protesters unexpectedly ballooned and the increased crowd generated
considerable traffic and congestion, so the protesters began using an acre of
donated private property west of President Bush’s ranch, which became known as “Camp
Casey II.”  The protest leaders again worked very closely with the Sheriff’s
Department to make sure the roadway stayed open.

After the protest moved from Camp Casey I to Camp Casey II, the Sheriff’s Department asked the protest leaders if the protesters
could park their cars in Crawford and shuttle people between the sites to alleviate
some of the parking congestion, and the protesters agreed.  The Sheriff’s Department
also suggested a route for going back and forth between Crawford, Camp Casey I, and Camp Casey II so that vehicles would not have to pass in opposite
directions, and the flow of traffic would be easier.  Protesters also complied
with that request.  However, resident-complaints persisted as the protest
continued, and the McLennan County Commissioners’ Court began to pass ordinances
in an effort to control the large protests that were reoccurring.  First, the
Commissioners’ Court passed an ordinance that made the seven-mile area around
President Bush’s ranch a no-parking zone.  Second, the Commissioners’ Court
passed an ordinance that prohibited erecting tents between the fences on county
roads.  The Sheriff’s Department also changed its policies to enforce the new
regulations.

The protesters believed that erecting tents in the
ditches had significant symbolic meaning.  Sheehan testified that Camp Casey I with a tent became a symbol of the anti-Iraq-war movement that was recognized
throughout the world.  Because of the tents’ symbolic significance, the
protesters decided to challenge the constitutionality of the Commissioners’
Court’s ordinance at Thanksgiving.  They contacted the Sheriff’s Department and
said they were going to set up tents at the triangle area.  Hardy and Myers
were two of twelve people arrested that day but, like the others, were not then
charged with any offense.  After the November arrests, the attorney for those
arrested contacted the District Attorney’s office and asked that charges be
filed so that a test could be made of the validity and constitutionality of the
Commissioners’ Court ordinance.  However, communications regarding bringing
charges or modifying the ordinance failed.  Some protesters then made a
decision to violate the Order in April 2006.

On April 14, 2006, about 40 protesters returned to
 Camp Casey I to again engage in civil disobedience to challenge the ordinance
prohibiting the setting up of a tent in a ditch.  The protesters contacted
Captain Vanek and notified him that there was going to be a demonstration.  When
he arrived, he saw a tent set up in the ditch, off the roadway.  Captain Vanek
called for assistance, and approximately sixteen officers arrived at the scene.

Sergeant Smith read the protestors a prepared
three-page “NOTICE, ORDER OF PEACE OFFICER AND WARNING.”  The Notice included a
paraphrased version of the Commissioners’ Court ordinance and Section 42.03 of
the Texas Penal Code.  Sergeant Smith told those in the tent that they had ten
minutes to remove the tent.  After reading the Notice, those in the tent were
given four chances to leave the tent.  Because Hardy, Myers, and the other
protesters refused to leave the tent, they were arrested.

Prior to the events of April 14, the Sheriff’s
Department had closed the unnamed road on the south side of the triangle
because of the presence of a large number of media, protesters, and law
enforcement officers.  Hardy and Myers both testified that they understood that
the point of the civil-disobedience demonstration had been to challenge the
county ordinance, but they were instead charged with violating section 42.03 of
the Penal Code.

The jury charge instructed the jurors that the
Commissioners’ Court’s “No-Tent Order” was not the applicable law in this
case.  The jury found Hardy and Myers guilty as charged in the information.[4]




Sufficiency of the Evidence

In their first point of error, Hardy and Myers
assert that there is legally insufficient evidence to sustain their convictions
because the State failed to prove that they obstructed a roadway within the meaning
of section 42.03.  When reviewing a
challenge to the legal sufficiency of the evidence to establish the elements of
a penal offense, we must determine whether, after viewing all the evidence in
the light most favorable to the verdict, any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979).  Our duty is to determine if the finding of the trier of fact is
rational by viewing all of the evidence admitted at trial in the light most
favorable to the verdict.  Adelman v. State, 828 S.W.2d 418, 422 (Tex.
Crim. App. 1992).  In doing so, any inconsistencies in the evidence are
resolved in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

Specifically, Hardy and Myers complain
that the evidence is legally insufficient to support their convictions under
section 42.03 because the presence of the tent in the ditch was not an obstruction
of the roadway.  The State responds that section 42.03 does not require that
Hardy and Myers actually obstruct a roadway before an offense has occurred.  The
State argues that it proved a violation of section 42.03(a)(2)(A) when Hardy
and Myers disobeyed a reasonable order to remove the tent.

The relevant portion of section 42.03 provides
that a person commits an offense if:  

1) without legal privilege or authority, 

2) he intentionally or knowingly disobeys, 

3) a reasonable request or order to move, 

4) issued by a person the actor knows to be or is
informed is a peace officer, or a person with authority to control the use of
the premises, 

5) to prevent obstruction of a highway or street.

 

Tex. Pen. Code Ann. § 42.03(a)(2)(A).

            Section 42.03(b) defines
"obstruct" to mean "to render impassable or to render passage
unreasonably inconvenient or hazardous.  Id. § 42.03(b).

Statutorily, the Transportation Code defines
“Highway or Street” to mean the width between the boundary lines of a publicly
maintained way, any part of which is open for vehicular travel.  Tex. Transp. Code Ann. § 541.032 (Vernon 1999).  It further defines “Roadway” as the portion of a highway, other than a berm
or shoulder, that is improved, designed, or ordinarily used for vehicular
travel.  Id. §
541.302(15)(A).  A shoulder is “adjacent to the roadway” and not designed or
ordinarily used for vehicular travel.  Id.

Hardy and Myers argue that under Threadgill v.
State and Morrison v. State, when an alleged obstruction is not
located on the roadway, a conviction cannot be upheld under section 42.03.  See
Threadgill v. State, 241 S.W.2d 151, 152-53 (Tex. Crim. App. 1951); Morrison
v. State, 71 S.W.3d 821, 827 (Tex. App.—Corpus Christi 2002, no pet.).  Threadgill
is the leading case for determining whether an object in a ditch can be
considered an obstruction of a highway.  See Threadgill, 241
S.W.2d at 152.  The Court of Criminal Appeals interpreted former article 784 of
the Penal Code, the predecessor of section 42.03.  There the defendant had parked
two semi-trailers on the side of Main Street in Houston.  From these trailers,
the defendant sold fireworks, and customers stopped their cars along and upon Main Street to make their purchases.  This "caused a dangerous traffic hazard which at
times … obstructed a part of the paved portion of the street."  Id. at 152.  The Threadgill court held that for there to be a violation, “obviously
under that statute there must be an obstruction of the road or highway.”  Id.  It further interpreted the statute as not prohibiting the
parking of vehicles upon a public highway and consequently held the evidence
was insufficient to show "an obstruction of a public highway, within the
meaning of Art. 784, P.C.”  Id. at 153.

Texas courts
once again looked at whether an object was an obstruction to sustain a
conviction under section 42.03 in Morrison.  See Morrison,
71 S.W.3d at 827.  Morrison stands for the proposition that the
obstruction must be immediately present for there to be a conviction under section
42.03.  The court held that a vehicle stopped in its lane of traffic on a two-lane
street did not violate section 42.03.  There, the officer testified that the
car stopped in the street was hazardous “because vehicles would have to go into
the wrong lane to pass and children might get hurt by such vehicle.”  But, as
the court observed, because neither condition actually occurred, there was no
obstruction of the road.  The court concluded that “passage was not
unreasonably inconvenient because there was no traffic.”  Id. at 828.

        The State argues that it is not necessary to prove that there was an obstruction of the street because Hardy and Myers were not convicted of obstructing a street, but with disobeying a reasonable request or order to move issued by a peace officer to prevent an obstruction of the street.[5]  Further, the State asserts that for a conviction to be upheld under section 42.03 there must be only some potential for the roadway or passageway to be obstructed.  We are thus presented with the question of whether a conviction under section 42.03(a)(2)(A) for refusing to obey an officer’s order to move can be upheld when there is no immediate obstruction and when the defendants presently did nothing “to render passage unreasonably inconvenient or hazardous.”  We hold that the potential or possibility for obstruction of the roadway must be present or immediate for a conviction under 42.03(a)(2)(A).  The statute does not indicate that the remote possibility of an obstruction is a violation.  The statute uses the present tense, and a statutory construction that included possible future obstructions would be entirely too broad.  By its plain language, section 42.03 requires that there be an actual obstruction or an immediately possible obstruction of a street or passageway.

In addition, cases examining obstructions of a
street look at the present situation and whether an actual obstruction occurred
when determining whether a violation of section 42.03 occurred.  See, e.g.,
Morrison, 71 S.W.3d at 827.; Haye v. State, 634 S.W.2d 313, 315
(Tex. Crim. App. 1982) (holding that individual standing in middle of sidewalk,
forcing pedestrian to walk around in mud, is sufficient to support finding that
obstruction of sidewalk rendered passage unreasonably inconvenient); Lauderback
v. State, 789 S.W.2d 343, 346-47 (Tex. App.—Fort Worth 1990, pet. ref'd)
(holding that where appellant blocked one lane of traffic with wheelchair,
causing cars to stop behind her and wait to move over into next lane to pass
her, clearly rendered passage unreasonably inconvenient or hazardous); Brightbill
v. State, 734 S.W.2d 733, 734 (Tex. App.—Amarillo 1987, no pet.) (holding
that where defendant parked vehicle in ditch where ditch was being graded,
forced the grader out of ditch, and instructed crew to leave was sufficient to
establish that defendant acted intentionally to render passage unreasonably
inconvenient or hazardous for road grader employed in legitimate enterprise).

At trial, Officer Vanek testified that the reason
the protesters were arrested for being in the tent was as follows:

[Q]: 
They could walk in the road if they didn’t obstruct traffic.  They could walk in
the bar ditch if they didn’t do anything.  One thing they couldn’t do was set
up a tent? 

[A]:  They
couldn’t set up, correct, because if they’re in a tent they are placing
themselves in a dangerous situation where they could not react to something
that would happen from the roadway.  

 

[Q]:  What
about the tents that they had out there that are open, that just have four legs
and tent top that would provide shade and protection from rain and things like
that?  Would those be okay? 

[A]:  Not
in my opinion, because if you give them an inch they will take a mile.  

 

…

 

[Q]:  And
if they just set up a tent and nobody got in the tent, but everybody stood
around the tent, would that be okay, in your opinion? 

[A]: No,
because that could still obstruct their view, the people between the tents.  We
would have taken the tents up if that was the situation, to prevent the
hazards.  

 

…

 

[Q]:  All
right.  Now, well, chairs are an obstruction, right?

[A]:  Well. 
A chair typically isn’t large enough to obstruct one’s view.   

 

Captain Vanek further testified that on the day of
the incident, the people in the tents were not obstructing the street, no
vehicles were actually obstructed, and when the people walking in the street
were instructed to move into the ditch so that they would not be obstructing
the roadway, they did so.

Lieutenant Janet Smith, testified: 

[Q]:  Why
was the decision made to only arrest people in the tents? 

[A]:  Because
they can stand in the roadway.  When you are standing or sitting in a chair, you
have the ability to see anything, danger coming at you; but once you reside
inside a tent or a tent as a semi-permanent structure, your visibility is
limited.  If a car is coming at you or you had to move out of the way quickly,
you would not be able to do it quickly at all, especially the size of tents
that these were.  They would not be able to move out of harm’s way.  

 

…


 

[Q]:  What
did you want them to do? 

[A]:  Just
to remove the tents.  They – they could stand or sit in the chairs, but not be
in the tents.  

 

Lieutenant Smith also testified that at any other
time it would not be considered an obstruction of the roadway to leave a car in
the same bar ditch overnight.

It is clear from the above testimony that the
officers were not concerned with the possibility of the tents obstructing the roadway;
they were concerned, if anything, with the safety of the protesters in the
tent.

The tent that Hardy and Myers were in was located
in the bar ditch, an area not used for vehicular traffic or passage, but for
drainage and the collection of excessive rainwater.  Their intent in being in
the ditch was not to obstruct the roadway, but to challenge the Commissioners’ “No-Tent
Order.”  Other protesters on that day were told to move into the bar ditch and to
stay off the roadway to prevent a violation of obstructing a roadway.  Under Threadgill
and Morrison, we hold that the evidence was legally insufficient to show
that the tent in the ditch was an immediate or potential obstruction of the street. 
Morrison, 71 S.W.3d at 828; Threadgill, 241 S.W.2d at 152-53.

Morrison
is particularly compelling because in that case, not only was the vehicle in the
actual roadway, vehicles would have been required to move to the other side of
the road to avoid the defendant’s vehicle.  See Morrison, 71
S.W.3d at 828.  However, that court found that because no vehicles at
that time were required to do so, there was no violation of section 42.03.  Id.  Like in Morrison, we must avoid an absurd result.  Id.  Here, the
tent in the ditch was not an immediate potential obstruction because the tent
was not in the roadway and there were no cars on the road.  Additionally, the street
had been closed by law enforcement and was filled with walking protesters who would
have hindered vehicular traffic if the street had in fact been open.  As
protesters, Hardy and Myers were required to restrain or limit their conduct to
not obstruct the street or make passage unreasonably hazardous or inconvenient,
and they complied with that by staying in the ditch on the day of the
demonstration.  Because the evidence is legally insufficient to support the
convictions under section 42.03, we will sustain Hardy’s and Myers’s first
issue.[6]




Conclusion 

Having sustained Hardy’s and Myers’s first issue,
we reverse the trial court's judgments of conviction and render judgments of
acquittal.

 

BILL VANCE

Justice

 

 

 

Before Chief Justice
Gray,

            Justice
Vance, and

            Justice Reyna

            (Chief
Justice Gray dissents without a separate opinion.)

Reversed and rendered 

Opinion delivered and
filed February 13, 2008

Publish

[CRPM]








 









[1]
Although the two causes were not
consolidated, they were tried together to a jury by agreement of the parties
and two separate judgments were issued.

 



[2] Section 42.03 provides in pertinent part:                    (a)       A person commits an offense if, without legal privilege or authority, he intentionally, knowingly, or recklessly:                                         (1)               obstructs a highway, street, sidewalk, railway, waterway, elevator, aisle, hallway, entrance, or exit to which the public or a substantial group of the public has access, or any other place used for the passage of persons, vehicles, or conveyances, regardless of the means of creating the obstruction and whether the obstruction arises from his acts alone or from his acts and the acts of others;  or(2)                                    disobeys a reasonable request or order to move issued by a person the actor knows to be or is informed is a peace officer, a fireman, or a person with authority to control the use of the premises:                                                             (A)             to prevent obstruction of a highway or any of those areas mentioned in Subdivision (1);  or(B)              to maintain public safety by dispersing those gathered in dangerous proximity to a fire, riot, or other hazard.                    (b)      For purposes of this section, "obstruct" means to render impassable or to render passage unreasonably inconvenient or hazardous.                    (c)       An offense under this section is a Class B misdemeanor.

Tex.
Pen. Code Ann. § 42.03 (Vernon 2003).

 





[3] Camp Casey was named after Sheehan’s son, who
died in Iraq.





[4] The information states as follows: 

Defendant, in the County of
McLennan and State of Texas, heretofore on or about the 14th day of April, A.D.
2006, did then and there, without legal privilege or authority, intentionally
or knowingly disobey a reasonable request or order to move issued by Sgt. Janet
Smith, a person the defendant knew to be a peace officer with authority to
control the use of the premises, to prevent obstruction of a street.





[5] The jury charge states:

On or about the 14th day of
April, A.D. 2006, did then and there, without legal privilege or authority,
intentionally or knowingly disobey a reasonable request or order to move issued
by Sgt. Janet Smith, a person the defendant knew to be a peace officer with
authority to control the use of the premises, to prevent obstruction of a street.”  





[6] Hardy and Myers argue three additional points of
error: (1) that section 42.03 was unconstitutionally applied in violation of
their First Amendment right to engage in symbolic political conduct; (2) the
order given by law enforcement was manifestly unreasonable under Penal Code
section 42.04; and (3) the law enforcement order violated their due process
rights by failing to be based on a clear line between protected and unprotected
conduct.  Because we reverse and render judgments of acquittal, we need not
reach Hardy’s and Myers's remaining points of error.