

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-608-08

### EMILY HARDY and HIRAM K. MYERS, Appellants

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW
### FROM THE TENTH COURT OF APPEALS
### McLENNAN COUNTY

JOHNSON, J., delivered the opinion of the Court in which PRICE, WOMACK, HOLCOMB, and COCHRAN, JJ., joined. KELLER, P.J., filed a dissenting opinion in which MEYERS, KEASLER and HERVEY, JJ., joined.

## O P I N I O N

Cindy Sheehan lost her son, Casey, in the Iraq War in 2004. In August 2005, Ms. Sheehan traveled to Crawford, Texas, in an attempt to meet with President Bush about her son's death. Ms. Sheehan's efforts turned into an anti-war demonstration that extended over an eight-month period.[1]

---

[1] The main demonstration occurred during August 2005. Some demonstrators returned in November and again in April to challenge the constitutionality of ordinances enacted by the county in response to the August demonstration. The original area used in the demonstration was called Camp Casey I. As the demonstration grew a local Crawford residence donated an acre for the demonstrators to use; this was identified as Camp Casey II. Ms. Sheehan later purchased five acres of land near Crawford. This area was named Camp Casey III.

Appellants Emily Hardy and Hiram Myers participated in the demonstration.

As the August demonstration gained momentum, demonstration leaders cooperated with the McLennan County Sheriff's Department to ensure that the demonstrators were not violating any laws or creating hazardous conditions. Because some demonstrators were encroaching on the roadway, Sheriff's Captain Vanek suggested that the demonstrators move to a triangle of land (the triangle) created by the intersection of three roads: Morgan Road on the west, Prairie Chapel Road diagonally on the north and east, and a short (229 feet) unnamed road on the south. This triangle was called Camp Casey I. Appellants and other demonstrators erected small tents in this area. Because of complaints from neighbors, Captain Vanek asked the demonstrators to move from the triangle to the shoulder, and they moved from the triangle to the bar ditches on the west side of Morgan Road and the south side of the unnamed road. They were told by sheriff's deputies that they could be in the bar ditches, but had to stay off of the roads themselves.

The number of demonstrators grew to over 700 and sometimes as many as 2000 on a weekend. A neighboring landowner offered the use of an acre of land, and most of the demonstrators moved to that area, alleviating much of the congestion and traffic.

During August 2005, there were no major incidents involving demonstrators and no arrests for obstructing a roadway. At that time, the Sheriff's Department's policy as to the demonstrators was to allow them to use the bar ditches because they were "public property on which they could express their views." Demonstrators and sheriff's deputies cooperated in keeping the paved areas unobstructed. At the suggestion of deputies, demonstrators parked their cars in Crawford and went to the site by shuttle. Also at the suggestion of deputies, they used roads between the site and Crawford in such a way as to create *de facto* one-way roads to reduce the frequency of meeting other

vehicles. Captain Vanek also testified that the demonstrators cleaned up the area before they left.

After the first demonstration ended at the end of August, and after receiving complaints from nearby residents about the congestion and heavy traffic at Camp Casey I, in September the McLennan County Commissioners Court issued an "order" that prohibited tents (part III) and sewage receptacles (portable toilets)(part IV)[2] from being placed on the right-of-way of any county road, and defined "right-of-way" as the area between the fences on county roads (part II).[3] The order suffered from poor drafting and, because of the poor drafting, provided no penalty for erecting a tent except removal of the tent by county personnel because it was a public nuisance. The order stated that the county would prosecute violators "in accordance with the criminal trespass laws of Texas." In response to the new ordinance, the Sheriff's Office changed its policies as to the demonstrators.

On April 14, 2006, in an effort to challenge the constitutionality of the tent ordinance, appellants erected a tent on the south side of the unnamed road in the area defined in the new ordinance as part of the right-of-way.[4] Captain Vanek was informed by the demonstrators of their intentions in advance.[5] Along with 15 other officers, Captain Vanek went to the site. Lieutenant Smith[6] read to the demonstrators a "Notice."

> In order to keep you safe, prevent interference with traffic, and protect the safety of

---

[2] Part I defined terms, part II dealt with public nuisances, and part V dealt with civil enforcement of the order.

[3] Under this definition, the triangle was part of the public right-of-way, but the owner of some abutting land produced a warranty deed to prove that the triangle was private property.

[4] This was appellants' second attempt to challenge the order. On Thanksgiving Day 2005, appellants and other demonstrators erected tents and were arrested, but charges against them were never filed.

[5] Although no roadway obstruction existed, the Sheriff's Department voluntarily closed the road adjacent to the bar ditch where the tents were located.

[6] At the time of the offense, she was a sergeant.

the traveling public, we must insist that you stay off of the road. Furthermore, vehicles must not be parked on the road. You should stay in the bar ditches along the road, and park any vehicles in the ditch area with no part of the vehicle sticking out into the road.

We will give reasonable warnings, however, if you fail to comply with the directives to stay off of the road, or to move a vehicle off of the road, the applicable laws of the State of Texas will be enforced.

The notice continued with the text of TEX. PENAL CODE § 42.03(a) and a statement that violation was a Class B misdemeanor and could also result in the towing of offending vehicles. It concluded with "[w]e ask for your cooperation in maintaining unobstructed and safe passage over the road" and the possibility of criminal trespass if they were on private property. Lieutenant Smith then read to the demonstrators a "warning."

Your erection of a tent or tents in a right-of-way of Prairie Chapel Road and Morgan Road presents public safety concerns and is hazardous. The road and its right-of-way are dedicated to travel. Vehicular traffic passes in both direction along the road. Occasionally, vehicles may stray into the right-of-way due to accident, driver error, mechanical will [sic] problems, road conditions or other cause. It is unsafe for persons to be occupying structures in such proximity to the roadway. Furthermore, such presents a hazard for evasive action, forcing the driver to choose whether to take evasive action to avoid an accident or possibly running over a person who could be occupying the structure erected on the right-of-way.

Therefore, you are ordered to remove the tents out of the right-of-way immediately. Failure to do so may result in your arrest pursuant to 42.03 of the Penal Code.

Please take notice that the property upon which you have erected a tent is the right of way of a McLennan County road. By order dated September 27th, 2005 the McLennan County commissioners court by virtue of its general authority of [sic] a county road prohibited the erection of shelters in the right of way of county roads. The county's right of control over the county's roads gives it a superior right to possession. Your use of the right of way in violation of the county's regulation is a trespass. Therefore, please be warned that you must immediately remove from the right of way the tents which you have erected. If you refuse to do so, you may be arrested for criminal trespass in accordance with sub-section 30.05 of the Penal Code. In addition the public easement upon the property is limited to travel and the incidents thereof. The underline [sic] legal title belongs to the adjoining landowner

or owners who have informed the Sheriff's Office that they object to the erection of such items on the property and considers [sic] such to be in access [sic] of the public easement. Therefore, you are further warned to remove from the right of way the tents as such is a trespass upon the property interest of the adjoining landowners. Failure to do so may result in your arrest for criminal trespass.

Appellants went into a tent that had been erected on the grassy area on the south side of the unnamed road and remained there until they were arrested. Both video tapes of the scene show a line of demonstrators seated in folding chairs that were set up approximately five feet from the edge of the pavement and to the west of the tent closest to the pavement. One of the two videos that are part of the record shows that, before the sheriff's deputies arrived, a full-size sedan[7] was parked directly to the east of the tent closest to the road. It is completely off the pavement, and the tent was further off the road than the sedan is wide. All of the chairs were closer to the road than was that tent. A second tent was placed directly to the west of the first tent, next to the line of chairs and slightly behind it. A third tent was erected behind the other two tents and was close to the fence. All three were small "pup" tents in which an average-size adult could sit upright only in the center. Everyone who was in any of the three tents was arrested. Before each arrest, Sgt. Channon approached the tent, explained that tents were prohibited and asked the demonstrator to leave the tent. Sgt. Channon can be heard on the video tape informing the demonstrators that they were being arrested for violating the tent ordinance. He did not at any time approach anyone sitting in a chair. Demonstrators who sat in lawn chairs on the side of the main road, next to the tents and closer to the pavement, were not asked to move, nor were they arrested. It is clear from the testimony and the video tapes that the offense for which appellants were arrested was not being so close to a road as to obstruct it, but for being in a tent set up in the "right-of-way" of a county road, as described in the

---

[7] The shape of the grill suggests that the car is a late model Buick.

county ordinance. However, they were later charged with violating TEX. PENAL CODE § 42.03, Obstructing Highway or Other Passageway. The trial court granted appellants' motions for a joint trial, and the cases were tried to a jury.

At trial, Captain Vanek testified that tents were dangerous because people inside could not see what was going on around them and "could not react to something that would happen from the roadway." His testimony indicated that his concern for the hazard created by the demonstrators was based on the speculative and the abnormal: two vehicles too wide to pass each other, sudden mechanical failure, farm equipment traveling at such a speed that pedestrians could not get back from the road quickly enough.[8] When asked if tents that have no sides would be acceptable, he said that they would not be and agreed that the issue was not the protection of people inside the tents, even if only a canopy; tents were not allowed, even if unoccupied. When questioned about the events of April 14, he conceded that no one's passage on any of the three roads had been obstructed[9] and that the tents were not obstructing the paved area. Other law-enforcement witnesses also testified that tents were prohibited for the safety of the demonstrators.

Captain Vanek also testified that they had had problems with the tents in the past, but no problems existed on the day in question; however, they wanted to keep it under control before it got out of hand. When asked whether appellants were obstructing the street, Captain Vanek said "No,

---

[8] The theme was continued in the warning that was read to the demonstrators: "vehicles may stray in the right-of-way due to accident, driver error, mechanical will [sic] problems, road conditions or other cause." Reporters Record, vol. 3, p. 76.

[9] State's exhibits 18-24 are photographs showing a full-size pickup truck and a white Suburban passing each other on the unnamed road. State's exhibit 20 shows the white vehicle off to the side of the road on the triangle to give the pickup additional clearance. During the April demonstration, the triangle was roped off, and no demonstrators were in that area. State's exhibits 29-32 are photographs showing tents and portable toilets placed on the edge of the paved area, but these photographs were all taken during the August demonstration.

they were not obstructing the actual paved part of the street; they were obstructing the right-of-way."

He also stated that

> [w]ith individuals staying in tents in this type of area, the roads are very narrow, barely wide enough for two vehicles to pass safely, and the right-of-way from the road to the fences is narrow also. And if someone was driving down the road and had some type of mechanical failure on the vehicle or possibly they thought that another oncoming vehicle might hit them, they would have to take evasive action and possibly go into the ditch. And someone sitting in a tent wouldn't be able to see the hazard coming toward them . . . if you are enclosed in a tent, you wouldn't be able to react that way. It is a safety issue.
>
> * * *
>
> On April 14th, we did not have to divert any traffic that day. We got out there and took care of the situation before it became a hazard.

Lieutenant Smith testified that no traffic was diverted, no vehicles tried to drive down the unnamed road, and no one was unable to get by on the road. She agreed that all tents were erected off of the paved area, but "in the right-of-way" as defined by the county ordinance,[10] that a road is not the same as a bar ditch, that the notice she read instructed the demonstrators to stay in the bar ditch and to park their vehicles in the bar ditch, and that the order she gave was intended "to prevent

---

[10] [Defense]: The third page is a warning and tells the protesters about a McLennan County order dated September 27, 2005. Is that correct?
Lt. Smith: Yes, sir.
[Defense]: It's not a copy of the order, but it's a summary that someone wrote of the–their interpretation of the order because the McLennan County Commissioners passed an order that prohibited tents being in the right-of-way which they defined as the line between the fences–or the space between the fences. Is that correct?
Lt. Smith: Yes.

* * *

[Defense]: And your observation in writing this report was that on April 14, 2006, deputies responded to Prairie Chapel Road at Morgan Road in regards to protesters erecting tents along the roadway. Is that correct?
Lt. Smith: Yes, sir.
[Defense]: You've now seen the video, and you know that, in fact, all of the tents were erected not on the street but off the street. Is that correct?
Lt. Smith: In the right-of-way, yes, sir.

Reporter's Record, vol. 3, pp. 79, 82

something that hadn't happened yet." She also testified that, at the time of the arrests, "the entire roadway was closed because of media or protestors or law enforcement."

Defense counsel also asked Lieutenant Smith whether the demonstrators were on the roadway, and she replied, "No." She stated that the tents posed a hazard to the demonstrators because of the passing vehicles.[11] Lieutenant Smith also testified that it would not be considered an obstruction of the roadway to leave a car in the bar ditch, but residing inside a tent, or a tent as a semi-permanent structure, would limit a person's ability to view the surrounding area; therefore, it was deemed an obstruction.[12]

Sgt. Channon was shown state's exhibit 21 and conceded that it depicted two trucks, side by side "on the little road" and that they were not off the road. The cross-examination continued.

> [Defense]: Is it–what's the probability that these people with demonstrators standing all around them beside a tent are going to have a car come by at such a speed that he can't stay on the road and fulfill its legal obligation to drive on the pavement? What are the chances? How reasonable is it to assume that's going to happen?

> Sgt. Channon: I think that it's very reasonable.

Reporter's Record, vol. 3, p. 109.

When asked at trial if she was in the street, appellant Hardy stated,

> I wasn't in a street. And you know, as I listened to [the sheriffs' testimony,]–if the officer had said: 'This is a dangerous place. We're

---

[11] The Sheriff's Department had completely closed the road closest to the bar ditch because of the media and large crowd, thus making an obstruction of traffic or a hazardous condition unlikely.

[12] When questioned about what he considered an obstruction, Sgt. Channon stated, "In my opinion–I mean, if I have a vehicle in the middle of the country and its tires are not touching the roadway but two vehicles cannot pass going opposite directions without hitting something, then its an obstruction of that roadway." But if two vehicles cannot pass safely when the "obstructing" vehicle is completely off of the roadway, the roadway is, of necessity, so narrow that it violates Tex. Trans. Code § 251.007, Classification of County Roads; at a minimum, a county road must be twenty feet wide with a causeway of at least 12 feet. (In this context, "causeway" seems to mean "shoulder," but it does not appear to be defined in any statute.) Twenty feet is more than wide enough to allow two normal-sized vehicles to pass without incident.

> concerned about your safety. We need for you to back up or get out
> because we are concerned about your safety,' I would have gotten out.
> I didn't want to get arrested for being unsafe. I wanted to be able to
> speak out . . .. I wanted to get arrested as a result of [the no-tent]
> ordinance.

On direct examination, appellant Myers stated that, if he would have known that he was going to be charged with obstructing the roadway, he would have gotten out of the tent. Defense counsel also asked him whether he intentionally or knowingly obstructed a street, he replied, "I absolutely was not obstructing a street."

The jury found them guilty, and the trial court fined each appellant $150.00.

On appeal to the Tenth Court of Appeals, appellants argued that the evidence was legally insufficient to sustain their convictions because the state failed to prove that they created an obstruction within the meaning of § 42.03. *Hardy v. State*, 250 S.W.3d 133, 138 (Tex. App.–Waco 2008). The state argued that it was not necessary to prove that there was an obstruction of the street because appellants were not charged with obstructing a street, but with disobeying a reasonable request or order to move issued by a peace officer to prevent an obstruction of the street. *Id.* The court of appeals reversed appellants' convictions and rendered judgments of acquittal. It held that

> the potential or possibility for obstruction of the roadway must be present or
> immediate for a conviction under 42.03(a)(2)(A). The statute does not indicate that
> the remote possibility of an obstruction is a violation. The statute uses the present
> tense, and a statutory construction that included possible future obstructions would
> be entirely too broad. By its plain language, section 42.03 requires that there be an
> actual obstruction or an immediately possible obstruction of a street or passageway.

*Id.*[13]

The state petitioned this Court for discretionary review, asserting that the court of appeals

---

[13] *But see* TEX. GOV'T. CODE § 311.012(a); "Words in the present tense include the future tense."

did not review the evidence in the light most favorable to the verdict when it found that the evidence was insufficient. Specifically, the state asserts that § 42.03(a)(2)(A) does not require that there be an actual obstruction or an immediately possible obstruction of a street or a passageway, that the court of appeals incorrectly conducted its legal-sufficiency analysis by ignoring evidence that supported the verdict, and that a peace officer's subjective intent is irrelevant to a review of the sufficiency of the evidence. We granted the state's petition to review the court of appeals's holding.

## Standard of Review

When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); *see also Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

The Due Process Clause protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *Gollihar v. State*, 46 S.W.3d 243 (Tex. Crim. App. 2001). Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik*, 953 S.W.2d at 235; *Jackson,* 443 U.S. at 307.[14]

---

[14] "Highway" is not defined in the Penal Code. The jury charge defined "highway" by using part of the definition found in Transportation Code § 472.021(d)(2): "'highway or street' means the width between the boundary lines of a publicly maintained way any part of which is open to the public for vehicular travel." The definition in the Transportation Code is more detailed.

The application portion of the charge to the jury in appellant Hardy's case read:

> NOW, THEREFORE, if you find and believe from the evidence beyond a reasonable doubt that the Defendant, Emily Virginia Hardy, in the county of McLennan and State of Texas, heretofore on or about the 14th day of April, A.D. 2006, did then an there, without legal privilege or authority, intentionally or knowingly disobey a reasonable request or

**Arguments of the Parties**

Appellants contend that the evidence was legally insufficient to convict them of disobeying a reasonable order to prevent obstruction of a highway or street. Further, they assert that the court of appeals correctly held that to convict a defendant of disobeying an officer's order to move to prevent obstruction of a road, the potential obstruction must be more than a hypothetical possibility; it must be imminently probable.

The state argues that the court of appeals erred in its interpretation of § 42.03(a)(2)(A) because it relied on case law that pertains exclusively to § 42.03(a)(1), which is used for present obstructions. It contends that *Threadgill v. State*, 241 S.W.2d 151, 152-53 (Tex. Crim. App. 1951), should not be used as precedent because it pertains to a present obstruction and not a potential one.[15] The state also asserts that the plain language of § 42.03(a)(2)(A) makes clear that an actual or immediately possible obstruction is not a prerequisite. Thus, it argues that "the requirement for an

> order to move issued by Sgt. Janet Smith, a person the defendant knew to be peace officer with authority to control the use of the premises, to prevent obstruction of a street, to-wit: Prairie Chapel Road and Morgan Road, Crawford, Texas, to which the public or a substantial group of the public had access, then you will find the Defendant guilty. If you do not so find and believe or if you have a reasonable doubt thereof, then you will find the Defendant not guilty.
>
> Further, if you find and believe from the evidence beyond a reasonable doubt that the order, if given, was manifestly reasonable in scope, then you shall find the Defendant guilty. If you do not do find and believe, or if you have a reasonable doubt thereof, you will find the Defendant not guilty.
>
> Finally, if you find and believe from the evidence beyond a reasonable doubt that the order, if given, was not promptly obeyed, you shall find the Defendant guilty. If you do not so find and believe, or if you have a reasonable doubt thereof, you will find the Defendant not guilty.

[15] Threadgill sold fireworks from two semi-trailers parked on the side of a road in Harris County and off the paved area. Customers stopped their vehicles along and on the road, creating a traffic hazard when some of the customers' cars obstructed a part of the paved portion of the road. The state charged Threadgill with obstructing the roadway instead of charging the customers whose cars were in the roadway. This Court held that the statute did not prohibit parking a vehicle on a public highway, only parking in such a way to obstruct passage.

actual obstruction is absurd."

## Rules of Statutory Construction

Our first rule of statutory construction is to presume that the legislature meant what it said. *State v. Vasilas*, 187 S.W.3d 486, 489 (Tex. Crim. App. 2006) (quoting *Seals v. State,* 187 S.W.3d 417 (Tex. Crim. App. 2005)).  The Code Construction Act instructs that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T. CODE § 311.011(a).  Section 311.021 of that code, Intention in Enactment of Statutes, states that

> [i]n enacting a statute, it is presumed that:
>   (1) compliance with the constitutions of this state and the United States is intended;
>   (2) the entire statute is intended to be effective;
>   (3) a just and reasonable result is intended;
>   (4) a result feasible of execution is intended; and
>   (5) public interest is favored over any private interest.

Sec. 311.023, Statute Construction Aids, tells us that

> [i]n construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the
> (1) object sought to be attained;
> (2) circumstances under which the statute was enacted;
> (3) legislative history;
> (4) common law or former statutory provisions, including laws upon the same or similar subjects;
> (5) consequences of a particular construction;
> (6) administrative construction of the statute; and
> (7) title, preamble, and emergency provision.

Section 1.05(a) of the Penal Code, Construction of Code, instructs us that the "rule that a penal statute is to be strictly construed does not apply to this code.  The provisions of this code shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code."

**Analysis**

All but one of the few reported cases that address the import of a violation § 42.03 as the primary offense involve actual obstruction of a passageway and the interpretation of § 42.03(a)(1). The only case that deals specifically with § 42.03(a)(2), *Bustillo v. State*, 832 S.W.2d 668 (Tex. Crim. App. 1992), also involved actual obstruction of a passageway. Thus it appears that this case is one of first impression: what proof does a conviction pursuant to § 42.03(a)(2)(A) require when no actual obstruction occurred?

TEX. PENAL CODE § 42.03 states that

(a) A person commits an offense if, without legal privilege or authority, he intentionally, knowingly, or recklessly:
(1) obstructs a highway, street, sidewalk, railway, waterway, elevator, aisle, hallway, entrance, or exit to which the public or a substantial group of the public has access, or any other place used for the passage of persons, vehicles, or conveyances, regardless of the means of creating the obstruction and whether the obstruction arises from his acts alone or from his acts and the acts of others; or
(2) disobeys a reasonable request or order to move issued by a person the actor knows to be or is informed is a peace officer, a fireman, or a person with authority to control the use of the premises:
(A) to prevent obstruction of a highway or any of those areas mentioned in Subdivision (1); or
(B) to maintain public safety by dispersing those gathered in dangerous proximity to a fire, riot, or other hazard.
(b) For purposes of this section, "obstruct" means to render impassable or to render passage unreasonably inconvenient or hazardous.

The state appears to conflate the county ordinance and the statute. While the county ordinance barred structures in the right-of-way, the statute under which appellants were charged prohibits obstruction only of the part of a road easement that is used for vehicular travel. In the statute, obstruct "means to render impassable or to render passage unreasonably inconvenient or hazardous," but the state's evidence emphasized "obstruction" as the lack of ability of the

demonstrators to view their surroundings and thereby to be aware of any impending danger. Persons who sat in chairs next to the tents were not arrested and charged with obstructing a highway because a chair "typically isn't large enough to obstruct one's view." The obstructed view of a demonstrator does not satisfy the definition of "obstruct" in the statute–to render impassable or to render passage unreasonably inconvenient or hazardous. In common usage, "highway" is an area that has been modified so that it may be used for vehicular travel. This meaning comports with the text of § (a)(1), which prohibits obstruction of any place used for the passage of persons, vehicles, or conveyances. The statute expresses concern for the safety of those who are traveling, not those who may be on the side of the road. The state must therefore prove more than that the demonstrators were gathered in the bar ditches, which are areas that are not intended to be used for vehicular travel.[16]

Appellants were charged with disobeying an reasonable order to move so that they would not become an obstruction as defined in TEX. PENAL CODE § 42.03(b).[17] Read in accordance with grammar, context, and common usage, a person commits an offense if, without legal privilege or authority, he

(1) disobeys

(2) a reasonable order to move

(3) issued by a person who has authority to control the use of the premises, and

(4) the reasonable order is issued for the purpose of preventing the obstruction of a highway or any of the other areas mentioned in § (a)(1).

---

[16] The stated intent of the deputies to keep the persons in the tent from harm from impending danger apparently did not extend to persons seated in the right of way and within ten feet of the pavement.

[17] Both appellants testified that they understood that the point of the civil-disobedience demonstration was challenging the county ordinance prohibiting tents, but they were instead charged with violating § 42.03 of the Penal Code, Obstructing Highway or Other Passageway.

Applying the rules of statutory construction, we must give effect to the entire statute and arrive at a just and reasonable result that can be feasibly executed. We may also consider the object sought to be attained and the consequences of a particular construction.

The clear object sought to be obtained by this section is to maintain the ability of persons, vehicles, or conveyances to move freely along public passageways (§§ (a)(1), (a)(2)(A)) and to enable authorities to move citizens away from hazardous conditions (§ (a)(2)(B)). Section (a)(1) is unambiguously intended to criminalize actual obstruction of a public passageway, thus § (a)(2)(A) cannot mean the same thing if we, as directed, give effect to each part of the statute.

We conclude that, because the legislature chose to use "prevent" rather than "remove," an actual obstruction is not required, but we also conclude that the use of "prevent" indicates that a potential obstruction must exist. Considering the potential of an obstruction in relation to the definition of "highway" as a place used for the passage of persons, vehicles, or conveyances, we conclude that any potential obstruction must be capable of rendering the highway impassable or to render passage unreasonably inconvenient or hazardous. An example might be the presence of persons standing on the paved area of a road at a time when no vehicles are present. They are not a present obstruction, as passage is not being impeded, but they have the potential to become an obstruction if vehicles approach and they do not move. If the parade is approaching and an authority orders them to get off the road and they do so, no violation of any part of § 42.03 is shown. If they do not move, they then may be convicted of disobeying an order intended to prevent an obstruction. One might also "obstruct" a highway by aiming a strobe light at oncoming traffic, thereby rendering passage unreasonably hazardous, but cavorting on the sidewalk while dressed as a gorilla would not "obstruct" a highway. A large object placed on the side of the road, but in the line of sight on a

curve in the road, might also "obstruct," although a smaller object in the same location would not. In sum, an order to move to prevent an obstruction must be reasonable in the prevailing circumstances.

This interpretation follows the plain language of the statute, does not produce an absurd result that the legislature could not possibly have intended, yet produces a just and reasonable result that can be feasibly executed. In the present circumstances, such an order to move would be reasonable as to persons who were milling about and straying onto the highway. It would be unreasonable when applied to persons, such as appellants, who were ordered to remain in the bar ditch and off of the road and did so.

When Lieutenant Smith gave the initial warning to appellants on April 14th, she instructed them to stay in the bar ditches and off of the road to "keep you safe, prevent interference with traffic, and protect the safety of the traveling public." This warning indicates that the bar ditches were not considered by the authorities to be a part of the road and that the demonstrators would not obstruct the highway if they remained in the bar ditch.

The state's witnesses all testified that the demonstrators did not actually obstruct the road and that the demonstrators, including appellants, remained at all times in the bar ditch, an area commonly used for standing and parked vehicles. Nothing in the record indicates that appellants, by sitting in a small tent erected in the bar ditch or by any other conduct, rendered passage more unreasonably inconvenient or hazardous than by sitting in a chair in the same location. Neither is there any evidence that the tents themselves obstructed passage or made it hazardous. The cases cited by the state are inapposite, as they all involve an actual obstruction of passage, not an order by an authorized person to move to prevent an obstruction.

Further, the statute requires disobedience of an order to move so as to prevent an obstruction. The initial "notice" was a reasonable order that required the demonstrators to move to, and remain in, the bar ditch, and they complied. However, the "warning" to the demonstrators instructed them to take down the tents; it did not order them to move so that neither they nor the tents obstructed passage. If appellants had collapsed the tents and sat on them in the same location, they, like the demonstrators who sat in chairs next to the tents, would not have been arrested. The arrests were based on the prohibition in the county ordinance on erecting tents, even empty ones, in the bar ditch, not for disobeying a reasonable order to move from a passageway and thereby avoid becoming an obstruction. Proof that appellants violated the county ordinance is not proof that they violated § 42.03(a)(2)(A).

Viewing all the evidence in the light most favorable to the verdict, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Although we do not adopt the court of appeals's reasoning, it properly concluded that the evidence was legally insufficient to support the verdict.

We affirm the judgment of court of appeals.


Delivered: April 22, 2009
Publish