COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

                                               NO.
02-09-00332-CR

 

 

JOSE PALACIOS                                                                               APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

 

                                                       ------------

 

               FROM
THE 367TH DISTRICT COURT OF DENTON COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

A jury convicted Appellant Jose Palacios
of felony driving while intoxicated (DWI) and
assessed his punishment at three years=
confinement.  The trial court sentenced him accordingly.  In his sole issue, Appellant contends that
the evidence is insufficient to prove intoxication and therefore insufficient
to sustain his conviction.  He also
complains within his sole issue that his hospital records were admitted in
violation of his right of confrontation under the United States
Constitution.  Because we hold that the
evidence is sufficient to support his conviction and that his hospital records
were properly admitted, we affirm the trial court=s
judgment.

I.  Sufficiency of
the Evidence

A.  Standard of Review

After the parties briefed this case on
appeal, the Texas Court of Criminal Appeals held Athat
there is no meaningful distinction between a Clewis
factual‑sufficiency standard and a Jackson
v. Virginia legal‑sufficiency standard@ and
that

the Jackson v.
Virginia standard is the only standard that a reviewing court should apply
in determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable
doubt.  All other cases to the contrary,
including Clewis, are overruled.[2]

 

 








Accordingly, we apply the Jackson
standard of review to Appellant=s
sufficiency complaint.  In reviewing the
sufficiency of the evidence to support a conviction, we view all of the
evidence in the light most favorable to the prosecution in order to determine
whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.[3]  AOur
review of >all
of the evidence= includes evidence that was
properly and improperly admitted.@[4]

The sufficiency of the evidence should
be measured by the elements of the offense as defined by the hypothetically
correct jury charge for the case, not the charge actually given.[5]  Such a charge is one that accurately sets out
the law, is authorized by the indictment, does not unnecessarily restrict the
State=s
theories of liability, and adequately describes the particular offense for
which the defendant was tried.[6]  The law as authorized by the indictment means
the statutory elements of the charged offense as modified by the factual
details and legal theories contained in the charging instrument.[7]

B. 
The Indictment and Alternative Means of Proof

The indictment charged that Appellant Adid
then and there drive or operate a motor vehicle in a public place, while [he]
was then and there intoxicated, by reason of the introduction of alcohol, a
controlled substance, a drug, or a combination of two or more of those
substances in the body.@  The indictment did not allege a means of
proof.  Consequently, as the Texas Court
of Criminal Appeals has explained,

Under the Texas DWI statute, intoxication may be proven in either of two
ways:  (1) loss of normal use of mental
or physical faculties or (2) alcohol concentration in the blood, breath, or
urine of 0.08 or more.  The first
definition is the Aimpairment@ theory, while the
second is the Aper se@ theory.  They are not mutually exclusive, and, as long
as there is evidence that would support both definitions, both theories are
submitted in the jury charge.[8]

 

Here, both theories
were submitted in the jury charge.

 

C. 
Application to the Facts

The jury heard the following
evidence.  On a sunny, dry Friday before
Labor Day 2008 at about 1:30 p.m., witnesses observed a Ford F-150 pickup being
driven erratically on the southbound service road of State Highway 121.  Traffic was moderate to heavy.  The driver, later determined to be Appellant,
wove in and out of traffic with jerky movements, tailgated, used his brakes in
an extreme manner, and drove at inconsistent speeds.  The pickup veered from the right lane in
front of middle-lane driver Cara Welsh, cutting her off, and hit a Toyota Camry
in the left lane Aalmost at a T.@  The Camry had been trying to enter Highway
121 via an on-ramp just past the highway's intersection with Main Street.  The car and pickup spun and flew off the road
to rest on the left embankment of the overpass. 
The crash scene was in Lewisville, Texas.  The pickup was immobilized on a retaining
wall with the rear wheels suspended in the air. 
When Appellant could not free the pickup by alternately putting it in
forward and reverse gears, he exited the pickup.  Witnesses testified that he was bleeding
profusely from his face or head. 
Appellant never responded to the attempts at conversation by either the
driver of the car he hit or the witnesses to the crash.

After he left his pickup, Appellant
crossed the busy feeder road, walked approximately three hundred yards away
from the accident, and entered a liquor store and then, apparently, a
convenience store.  He wore a bloody
shirt when he entered the store.  After
he left the store, Appellant crossed a service road in traffic.  Drivers had to make Ahard
stop[s]@ to
avoid hitting him.  A witness to the
crash stopped traffic as Appellant then crossed the busy northbound service
road.  About 150 yards away from the
service road was a construction site. 
Appellant disappeared briefly behind some portable toilets at the
construction site.  When he reappeared,
Appellant was no longer wearing his bloody shirt.

City of Lewisville Officer Jeremy Reyna
testified that at 1:29 p.m. on August 29, 2008, he received a radio dispatch
that a crash had occurred.  He also
received information that one of the parties was leaving the scene.  Reyna arrived at the scene about six minutes
after he received the dispatch.  He was
driving on Highway 121 Anorthbound or eastbound, however you look at it, going towards The Colony@
when somebody using a cell phone and standing at the entrance to a construction
site on the right side of the road waved him down.  He drove into the site, and another person
using a cell phone pointed him toward Appellant.  The construction site was in The Colony,
Texas.

Reyna testified that Appellant Ahad
blood on him@ and
appeared disoriented.  Reyna asked
Appellant if he was Aokay@
because of the lacerations on his face and called EMS.  Appellant told the officer that he had hurt
his head and Athat
he got scared.@  Reyna also asked how the accident had
happened.  Appellant told him that he had
Apassed
through the light.@  Reyna then asked Appellant if he had been
drinking any alcohol because, Reyna testified, he Acould
obviously smell the alcohol on [Appellant] and . . . his demeanor, the way he
was standing and walking, led [Reyna] to believe [Appellant] may have been
drinking.@  Reyna explained to the jury that Appellant
was swaying as he stood in front of the portable toilet.  At first, Appellant denied drinking, but
Reyna told him to tell the truth, so then Appellant stated that he had consumed
two beers.[9]

When paramedics arrived, Appellant fell
asleep as he was being placed in an ambulance. 
Reyna testified that he believed that Appellant=s
falling asleep was due to intoxication rather than injuries because the
paramedic did not Asound too concerned@
when he was telling Appellant to wake up and because of the other factorsCthe
way Appellant was acting and his swaying. 
Even though Reyna did not ask Appellant to perform field sobriety tests,
Reyna believed, based on the accident, Appellant=s
location away from the accident site, their interactions, Appellant=s
falling asleep, and his admission to drinking two beers, that Appellant was
legally intoxicated.

Witnesses told Reyna that Appellant had
left his shirt in a portable toilet. 
Reyna retrieved it.  When Reyna
went to the crash site, he discovered that there was no traffic light near the
scene.

Officer Kyle Koiner
of The Colony Police Department was dispatched to the accident scene.  An inventory of the pickup revealed a Astrong
odor of alcoholic beverage.@  Six 12-ounce beer bottles were on the front
floorboard; one had a small amount of beer left in it.  Either all or A[p]robably all@ of
them were Akind
of cold to the touch.@  Two unopened beer bottles, also Acold
to the touch,@
were in a six-pack container in the back seat of the extended cab.

When Koiner
left the accident site, he went to Trinity Medical Center in Carrollton, Texas
to check on Appellant, whom the ambulance had transported there.  Koiner spoke to
registered nurse Mary Hyland, who, he testified, informed him that Appellant=s
blood had been drawn at approximately 2:25 p.m. 
Koiner then went to Appellant=s
room.  The first thing Koiner noticed was A[t]he
smell of a lot of alcohol, of a big alcoholic beverage coming through the room,
a strong odor.@  The smell became stronger as Koiner moved closer to Appellant, who was lying in the
bed.  Appellant slurred his words and
grunted when Koiner tried to converse with him.  Koiner smelled
alcohol on Appellant=s breath and believed, based
on that observation, that Appellant Amaybe@ had
been drinking.  Koiner
gave the nurses what little information he had on Appellant and left the
hospital.

Hyland, who was employed by Trinity
Medical Center as an emergency room nurse when Appellant was admitted,
testified that upon his arrival, Appellant smelled heavily of alcohol and bowel
movement.  His initial injuries were
listed by EMS as lacerations to the nose and left cheek.

When asked whether she had drawn
Appellant=s
blood, Hyland explained, 

Usually, we do draw a
toxic panel to see what their chemistry is, what their blood counts are, what
drugs might be in their system, especially if they=re not able to state
their own complaints; and it looks like he was not able to state his own
complaint.

 

She also testified that a Atox
screen@ for
a nonresponsive patient would be a normal procedure at the hospital.  Hyland testified that Appellant=s
medical records showed that she supervised Dave Bills, an EMT
she was training, who actually performed the Avena
puncture . . . using sterile technique under [Hyland=s]
supervision.@  Hyland testified that the blood was taken
from the inside of Appellant=s
elbow at 2:15 p.m. before intravenous fluids were given to him using the same
site.

Hyland admitted on cross-examination
that it appeared that pages in Appellant=s
medical records indicated that blood was drawn at the same time as urine, 3:23
p.m., but also that for the serum alcohol test, blood was drawn at 3:31
p.m.  She explained that she put her
collection time, 2:15 p.m. in this case, on the label, but that she did not
enter that time in the computer; another hospital employee generated the
printed results.  On cross-examination,
Hyland answered, AYes,
sir,@
when asked, AThis
test was done for clinical purposes only, correct?@  She did not know whether the puncture site
was cleaned with isopropyl alcohol or if it was instead cleaned with chlorhexidine.

Appellant=s
discharge summary contains the following diagnoses:  ANasal
bone fracture, alcohol, ATOH intoxication, mild
facial strain, lumbar, facial laceration, face, scalp, neck contusion.@  Hyland testified that Appellant=s
serum alcohol number was high.

Emily Kuriakose,
a laboratory technologist at the hospital, testified that she analyzed
Appellant=s
blood sample for the presence of serum alcohol, specifically, ethanol,
otherwise known as drinking alcohol.  To
test the blood, Aa chemistry analyzer that is
QC and calibrated regularly@ was
used.  Serum blood rather than whole
blood was used because the manufacturer of the chemistry analyzer recommended
using serum blood.  Kuriakose
testified that the technique used is valid and generally accepted in the
scientific community and has been the subject of different peer reviews.  She said that Appellant=s
sample contained 287 milligrams per deciliter of ethanol alcohol.

Investigator Brent Robbins of the Denton
County Criminal District Attorney=s
Office testified that 287 milligrams of alcohol per deciliter of serum is .247
grams per 100 milliliters of ethyl alcohol in the whole blood, Aan
extremely high level,@ and slightly higher than
three times the legal limit.  Robbins
testified that the conversion formula he used is the generally accepted way in
Texas for converting from a serum result to a result that corresponds to the DWI statute.  Robbins
admitted that he could not say what Appellant=s
alcohol content was at the time he was driving.

In complaining that the evidence is
insufficient, Appellant contends that there is no basis for Reyna=s
opinion of Appellant=s intoxication because no
field sobriety tests were conducted, that the trial court improperly admitted
Appellant=s
hospital records over his confrontation objection, that the State=s
investigator, Robbins, relied on those records to form his opinion regarding
Appellant=s
intoxication, and that even Robbins=s
opinion did not address Appellant=s
alleged intoxication at the time of driving.

In performing a sufficiency review, we
consider all evidence, whether properly or improperly admitted.[10]  Considering the testimony from the witnesses
and police officers about Appellant=s
actions before and after the wreck, his demeanor, and his odor, as well as his
medical records, the testimony about his blood alcohol concentration (BAC), and the evidence of the beer and beer bottles in his
pickup, and viewing all the evidence in the light most favorable to the
prosecution, we must conclude that any rational trier
of fact could have found the essential elements of DWI
beyond a reasonable doubt.  We therefore
hold that the evidence is sufficient to support Appellant=s
conviction.

II. 
Admission of Medical Records

Appellant also argues that his medical
records were admitted in violation of his right to confrontation.  The lab technologist who determined his BAC results testified. 
Thus, no violation of his right to confrontation occurred with regard to
his BAC results.[11]  Further, considering Appellant=s
global challenge to the medical records, the only evidence indicated that the
medical records were created solely for treatment purposes.  They were therefore not testimonial,
and their admission did not violate Appellant=s
right to confrontation.[12]  Accordingly, the trial court did not abuse
its discretion by admitting Appellant=s
medical records.  We overrule Appellant=s
sole issue.

III. Conclusion

Having overruled Appellant=s
sole issue, we affirm the trial court=s
judgment.

 

 

LEE
ANN DAUPHINOT

JUSTICE

 

PANEL:  LIVINGSTON,
C.J.; DAUPHINOT and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
47.2(b)

 

DELIVERED: 
November 4, 2010











[1]See Tex. R. App. P. 47.4.





[2]Brooks
v. State,
No.
PD-0210-09, 2010 WL 3894613, at *14 (Tex. Crim. App. Oct. 6, 2010).





[3]Jackson
v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).





[4]Clayton, 235
S.W.3d at 778.





[5]Hardy
v. State,
281 S.W.3d 414, 421 (Tex. Crim. App. 2009); Malik v. State, 953 S.W.2d
234, 240 (Tex. Crim. App. 1997).





[6]Gollihar v. State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); Malik,
953 S.W.2d at 240.





[7]See Curry v. State, 30 S.W.3d 394, 404B05 (Tex. Crim. App. 2000).





[8]Kirsch
v. State,
306 S.W.3d 738, 743 (Tex. Crim. App. 2010) (citations
omitted).





[9]The record does not
reveal that Appellant=s motion to suppress
regarding his statements and other evidence was ever presented or ruled on.





[10]See
Clayton,
235 S.W.3d at 778 (providing that we consider even
improperly admitted evidence in performing legal sufficiency review).





[11]See
Crawford v. Washington, 541 U.S. 36, 59 n.9, 124 S.
Ct. 1354, 1369 n.9 (2004).





[12]See
Melendez‑Diaz v. Massachusetts, 129 S. Ct. 2527,
2533 n.2 (2009); Crawford, 541 U.S. at 42, 56,
124 S. Ct. at 1359, 1367.