

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-09-00165-CR

CLAUDE GEORGE BAILEY                                    APPELLANT

V.

THE STATE OF TEXAS                                            STATE

------------

## FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Claude George Bailey of six counts of aggravated sexual assault of a child under fourteen years of age and one count of indecency with a child, and the trial court sentenced him to life imprisonment on each count. Appellant brings thirteen points challenging the sufficiency of the evidence to support the jury's verdicts as to all counts. Because we hold that the evidence is sufficient

---

[1] See Tex. R. App. P. 47.4.

to support Appellant's six convictions for aggravated sexual assault of a child, we affirm the trial court's judgments on those counts. Because we hold that the evidence supporting Appellant's conviction for indecency with a child by contact is the same as that supporting one of the aggravated sexual assault convictions based on digital penetration, we reverse the trial court's judgment on the seventh count, set aside the indecency with a child conviction and sentence, and enter a judgment of acquittal on that count.

**Brief Facts**

At the time of his arrest, Appellant was married to Amparo Bailey. Amparo had children from previous relationships, including her daughter, C.S., the complainant, who was thirteen years old at the time of Appellant's arrest.

At trial, Amparo testified that on March 28, 2008, C.S. and Appellant brought her dinner to her at work, and Appellant urged Amparo to come home early because she looked tired. After they left and she ate dinner, Amparo decided that she would go home early. When she arrived home, the home was dark. She turned on the lights and then heard C.S. run to the bathroom. Amparo looked in the children's bedroom and saw Appellant standing by the window. Appellant told her that he was looking out the window for her. Amparo testified that after she turned on the light, she saw a bulge in Appellant's pants, "his zipper was halfway zipped, and he was sweating like crazy."

She spoke with C.S., who stated that Appellant had been trying to have sex with her. Amparo told Appellant to leave and then called the police. C.S. was taken to Cook Children's Hospital, where she underwent a sexual assault examination.

At trial, C.S. testified that Appellant had first touched her "vagina [sic]"[2] with his tongue when she was either ten or eleven years old. She stated that this conduct happened again when she was eleven or twelve years old, and again when she returned after living with her father in Florida part of the summer and fall of either 2006 or 2007. She also stated that Appellant had stuck his fingers inside her vagina, that on one occasion, he had caused his penis to make contact with and penetrate the labia of her genitals while trying to penetrate her vagina, and that he tried to do this on other occasions. In response to both direct and cross-examination, she explained what had occurred in each of the several different places she had lived with Appellant, her mother, and her sisters. She emphasized the fact that the sexual abuse had occurred many times. When asked if anything had come out of Appellant's penis, she said that something white had come out and had gotten on her legs but not on the night on which her mother discovered them.

C.S. also admitted that she had gotten in trouble at school not long before she left for Florida to be with her father and that she had gotten in trouble in Florida.

---

[2] *... See Tyler v. State*, 950 S.W.2d 787, 789 (Tex. App.—Fort Worth 1997, no pet.) (pointing out the anatomically correct usage of the word *vagina*).

3

The senior forensic analyst for the Tarrant County Medical Examiner's Office conducted tests on items collected by the police from Appellant's home and on the swabs taken in C.S.'s sexual assault examination. None of the samples from the sexual assault examination tested positive for the presence of semen. The blanket collected by the police from the children's bedroom, however, did test positive for the presence of semen.

Appellant does not challenge the sexual offender notice.

**Standard of Review**

After the parties briefed this case on appeal, the Texas Court of Criminal Appeals held "that there is no meaningful distinction between a *Clewis* factual-sufficiency standard and a *Jackson v. Virginia* legal-sufficiency standard" and that

> the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. All other cases to the contrary, including *Clewis*, are overruled.[3]

Accordingly, we apply the same standard of review to all of Appellant's sufficiency complaints. In reviewing the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution

---

[3] *See Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, at *14 (Tex. Crim. App. Oct. 6, 2010).

4

in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4]

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[5] The trier of fact is the sole judge of the weight and credibility of the evidence.[6] Thus, when performing a sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.[7] Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict."[8] We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution.[9]

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the

---

[4] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[5] *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

[6] *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009).

[7] *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000).

[8] *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).

[9] *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

charge actually given.[10]  Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.[11]

**Analysis**

The State candidly admits that sex offenses are nature-of-conduct crimes rather than result-of-conduct crimes and that they therefore require proof of the additional element of "manner and means."[12]  Consequently, as the State explains, "In this case, each of the indictment's seven counts alleged a specific manner and means . . . [that] are thus necessary elements of the hypothetically correct jury charges [HCJCs in table below] to be used by this Court in evaluating the appellant's sufficiency challenges."  The State has provided a helpful table summarizing the elements of each count it was required to prove.  We duplicate and incorporate that table here:

| **Elements Common To All Aggravated Sexual Assault HCJCs** |
| --- |
| (1) The appellant,<br>(2) intentionally or knowingly,<br>(3) caused, |

---

[10] ... *Hardy v. State*, 281 S.W.3d 414, 421 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

[11] ... *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik,* 953 S.W.2d at 240.

[12] ... *Huffman v. State*, 267 S.W.3d 902, 906 (Tex. Crim. App. 2008) (discussing *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999)).

. . .

. . .

(6) and C.S. was younger than 14 years of age and

(7) was not the appellant's spouse.

---

**Elements Unique To Each Aggravated Sexual Assault HCJC**

| | *Type of Conduct Caused* | *On or About* |
|---|---|---|
| *Count 1:* | (4) C.S.'s sexual organ to contact appellant's sexual organ | (5) 03-28-08 |
| *Count 2:* | (4) C.S.'s sexual organ to contact appellant's mouth | (5) 12-30-07 |
| *Count 3:* | (4) penetration of C.S's sexual organ using appellant's finger | (5) 01-01-06 |
| *Count 4:* | (4) C.S's sexual organ to contact appellant's sexual organ | (5) 12-01-07 |
| *Count 5:* | (4) C.S.'s sexual organ to contact appellant's mouth | (5) 01-01-06 |
| *Count 6:* | (4) penetration of C.S.'s sexual organ using appellant's finger | (5) 01-01-07 |

---

**HCJC Elements for Count 7: Indecency**

(1) the appellant

(2) with the intent to gratify his sexual desire

(3) engaged,

(4) in sexual contact,

(5) with C.S.,

(6) by touching C.S.'s sexual organ,

(7) on or about March 15, 2008, and

(8) C.S. was under 17 years of age

---

C.S. testified that she was younger than fourteen years old at the time of these incidents and that she was not Appellant's spouse. She also testified that she lived with her father in Florida either in the summer and part of the fall in 2006 or during the same period in 2007. The State explains that at trial, it attempted to divide the offenses into the pre-Florida offenses and the post-Florida offenses.

**Oral-Genital Contact**

The second and fifth counts of the indictment allege oral-genital contact; that is, they allege that Appellant committed aggravated sexual assault by causing C.S.'s female sexual organ to contact his mouth on or about December 30, 2007, and January 1, 2006, respectively. Appellant challenges the sufficiency of the evidence

to support his convictions under these counts in his first four points. Specifically, he contends that the record does not remove reasonable doubt and that it contains only vague and sometimes contradictory allegations. He relies on conflicts within C.S.'s testimony about when the sexual assaults began and her admission that she has confused some of the incidents. He also contends that she offered no specifics or details and that her testimony lacks corroboration.

The State concedes that C.S. did not testify that the aggravated sexual assaults alleged in Count Two and Count Five happened on a specific date. But the State is not required to prove the specific date when the indictment alleges an "on or about" date.[13] The law clearly permits the State to allege that an offense occurred on or about a specific date.[14] The proof is sufficient if it proves the offense occurred on a date anterior to the presentment of the indictment but within the statutory limitations period.[15] As this court has previously explained,

> This great latitude given to the State has a rational basis when the victim is a young child. A young child may make no outcry for several months or even years. When outcry is finally made, the child often is unable to establish a specific date of the offense but must pinpoint the

---

[13] ... *Sledge v. State*, 953 S.W.2d 253, 255, 259 (Tex. Crim. App. 1997).

[14] ... *Id.* at 255.

[15] ... Tex. Code Crim. Proc. Ann. art. 21.02(6) (Vernon 2009); *see also id.* art. 12.01(1)(B) (Vernon 2005) (providing that there is no limitation on offenses of aggravated sexual assault of a child under fourteen years of age); Tex. Penal Code Ann. 22.021(a)(1)(B), (2)(B) (Vernon Supp. 2010) (providing elements of offense).

8

event by describing it in terms of significant holidays, a particular residence, or the circumstances of the offense itself.[16]

As Appellant concedes, a child complainant's testimony standing alone can be sufficient to support an aggravated sexual assault conviction.[17]

C.S. testified that when she was ten or eleven years old and the family lived in a trailer home in Fort Worth, Appellant "ate [her] up." C.S. explained that he touched "[her] vagina [sic] . . . [w]ith his tongue" and that his tongue went inside her. Amparo had already testified that the family had lived in a mobile home in Tarrant County.

C.S. testified that the family moved from the trailer home to a house on Hilldale in Fort Worth, Texas, when she was eleven or twelve years old and that Appellant "tried to do the same thing[—]. . . eat [her]" more than once. Amparo had already testified that the house was in Fort Worth, Tarrant County, Texas.

C.S. lived with her family on Hilldale Road before she moved to Florida. C.S. testified that after she returned from Florida and was again living with her mother and Appellant in an apartment, Appellant "tried to do [the] same thing he did before [she] left, tr[ied] to stick his tongue on [her] vagina [sic]" again. Amparo had already

---

[16] *Sledge v. State*, 903 S.W.2d 105, 107 (Tex. App.—Fort Worth 1995), *aff'd*, 953 S.W.2d 253 (Tex. Crim. App. 1997).

[17] Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1) (Vernon 2005); *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978).

testified that the family lived in the Oakwood Village Apartments in Hurst, Tarrant County, after leaving the Hilldale house.

Accordingly, viewing all of the evidence in the light most favorable to the prosecution, we hold that the evidence is sufficient to support Appellant's convictions on these two counts. We overrule Appellant's first four points.

**Genital–Genital Contact**

In his eleventh and twelfth points, Appellant challenges the sufficiency of the evidence of genital–genital contact charged in the indictment's fourth count, alleged to have occurred on or about December 1, 2007. In his thirteenth point, he challenges the sufficiency of the evidence of genital-genital contact alleged in the first count to have occurred on or about March 28, 2008. Again, he complains that the evidence lacks specificity and corroboration by physical evidence and that the evidence is conflicting.

C.S. testified that Appellant penetrated her labia with his penis at the trailer home after the first time he touched her female sexual organ with his tongue. She also testified that he later "tried to stick his penis in [her] vagina" more than once when they lived at the Hilldale house, both before and after she lived in Florida. In response to Appellant's contention that C.S. testified that he "tried" to put his penis in her vagina but not that he succeeded, we note that the offense of sexual assault

10

no longer requires penetration of the vagina, merely the sexual organ, which includes the vulva and labia.[18]

C.S. testified that in March 2008, when she and Appellant were alone in the Oakwood Village Apartments, he took off her clothes and tried to stick his "area" in her "area." She explained that his "area" was used to make babies and use the rest room and her "area" was for using the restroom and clarified that his "area" was his penis and hers was her "vagina." She testified that Appellant's penis penetrated her labia.

On cross-examination, C.S. testified that she remembered telling the CPS interviewer that Appellant "would try to stick it in and he would think it was [her] private area, but it was really [her] leg because he was dumb[.]" C.S. also remembered telling the CPS interviewer that "he never really did it to [her] as far as his penis contacting [her] vagina or penetrating [her] vagina because it was really [her] leg and he was just dumb[.]" On redirect, C.S. testified both that she was not sure whether Appellant's penis had contacted her female sexual organ that night and that she was sure that his penis had contacted her female sexual organ. She explained that while his penis did not enter the opening of her vagina, it did enter her labia. The sexual assault nurse at Cook Children's testified that C.S. told her,

> [I]t was time to take a bath, and he went in his room, and [C.S.] was looking for something to dry [her]self with, and he told [her] to get in

---

[18] ... *Steadman v. State*, 280 S.W.3d 242, 247–48 (Tex. Crim. App. 2009); *Karnes v. State*, 873 S.W.2d 92, 96 (Tex. App.—Dallas 1994, no pet.).

11

the—on the bed, and he got on top of [her] trying to force his way in, but [she] shut [her] legs. He got up because [she] wouldn't let him, and then [C.S.] got up and tripped and fell on [her] stomach, and then he got on top of [C.S.] and tried to put it in [her] back, but [she] wouldn't let him, and then [they] heard [Amparo], and he got up, and [C.S.] went in the bathroom.

When the nurse asked C.S. specifically about vaginal contact, C.S. told her "that maybe it went in, she wasn't sure because she was fighting him." But later on in the conversation C.S. said, "[Y]eah, I think it did go in." The nurse testified that C.S. also told her that Appellant first sexually assaulted C.S. when she was around twelve years old and that it had happened multiple times.

Accordingly, viewing all the evidence in the light most favorable to the prosecution, we hold that the evidence is sufficient to support Appellant's two convictions for genital–genital contact. We overrule Appellant's eleventh, twelfth, and thirteenth points.

**Digital Penetration and Indecency With a Child**

In his fifth and sixth points, Appellant argues that the evidence is insufficient to support his conviction under the indictment's third count, alleging digital penetration on or about January 1, 2006. His seventh and eighth points challenge the sufficiency of the evidence to support his conviction under the indictment's sixth count, alleging digital penetration on or about January 1, 2007. C.S. testified that Appellant stuck his fingers inside her labia at the Hilldale house and at the stadium when she and Appellant were working at a concession stand there in 2006 or 2007. Amparo had already testified that Appellant worked in a football stadium while they

12

were living on Hilldale or in the apartment and that he took the children with him sometimes. On cross-examination, C.S. admitted that she did not tell the police or the Cook Children's nurse about anything happening at the stadium but insisted that she told the CPS investigator.

By describing events that took place in two separate places, both in 2006 or 2007, C.S. has described two separate offenses. Accordingly, viewing all the evidence in the light most favorable to the prosecution, we hold that the evidence is sufficient to support Appellant's two convictions for digital penetration.

But as Appellant points out, the State elected at trial to rely on the incident C.S. described as occurring at the stadium—the incident used to support the digital penetration conviction on Count Six—for proving the indictment's seventh count, which alleges that on or about March 15, 2008, Appellant committed indecency with a child by touching C.S.'s female sexual organ. That is, the State elected to rely on "a time that [C.S.] was working the concession stand and [Appellant] touched her genitals in the concession stand [with] . . . [h]is hand" to seek conviction on Count Seven. The State's election was presented to the jury in the jury charge:

> Now, therefore, if you find and believe from the evidence beyond a reasonable doubt, that [Appellant], in Tarrant County, Texas, on or about the 15th day of March, 2008, did then and there intentionally, with the intent to arouse or gratify [his] sexual desire . . . , engage in sexual contact while working at the concession stand at the stadium by touching the female sexual organ of [C.S] . . . with his hand, as charged in Count Seven of the Indictment, then you will find [Appellant] guilty of indecency with a child by contact as charged in Count Seven of the Indictment.

13

Unless you so find and believe from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit [Appellant] of indecency with a child by contact as charged in Count Seven of the Indictment and say by your verdict, "Not Guilty."

Consequently, the State's argument that the evidence is sufficient to support an indecency conviction for oral-genital contact occurring at the mobile home is irrelevant.[19]

Our review of the record yields evidence of only two instances of digital-genital contact or penetration, and there is no evidence that the other multiple aggravated sexual assaults to which C.S. testified generally included digital-genital contact or penetration, nor is there any evidence that digital-genital contact occurred at the stadium except during the digital-genital penetration for which Appellant was convicted in Count Six.

Because under these facts, indecency with a child by contact with her female sexual organ with the hand is a lesser included offense of digital penetration of the female sexual organ occurring in the same incident, we overrule Appellant's fifth through eight points, which challenge the sufficiency of the evidence supporting the aggravated sexual assault convictions based on digital penetration, and sustain his ninth point, which challenges the sufficiency of the evidence supporting his conviction for indecency with a child by contact.[20] We reverse the trial court's

---

[19] *See Phillips v. State*, 193 S.W.3d 904, 909 (Tex. Crim. App. 2006) (explaining that requiring the State to elect "forces it to formally differentiate the specific evidence upon which it will rely as proof of the charged offense from evidence of other offenses or misconduct . . .").

[20] *See Bigon v. State*, 252 S.W.3d 360, 373 (Tex. Crim. App. 2008) (retaining first-degree felony as "most serious offense" over second-degree felony

judgment on the seventh count, set aside Appellant's conviction and sentence for indecency with a child, and enter a judgment of acquittal on that count.[21] Due to our disposition of his ninth point, we do not reach Appellant's tenth point.[22]

**Conclusion**

Having overruled Appellant's eleven points challenging his six convictions for aggravated sexual assault of a child, we affirm the trial court's judgments on those counts. Having sustained Appellant's dispositive point challenging his conviction for indecency with a child by contact, we reverse the trial court's judgment on the seventh count, set aside Appellant's conviction and sentence for indecency with a child, and render judgment of acquittal on that count.

LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 28, 2010

---

with identical sentence); *Ex parte Pruitt*, 233 S.W.3d 338, 348 (Tex. Crim. App. 2007) (holding genital contact subsumed within alleged incident of penetration is lesser included offense of penetration); *Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004) (holding penile contact with genitals in course of penile penetration subsumed).

[21] *See Bigon*, 252 S.W.3d at 373.

[22] *See* Tex. R. App. P. 47.1.

15