

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00332-CR

JOSE PALACIOS                                                             APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Jose Palacios of felony driving while intoxicated (DWI) and assessed his punishment at three years' confinement. The trial court sentenced him accordingly. In his sole issue, Appellant contends that the evidence is insufficient to prove intoxication and therefore insufficient to sustain his conviction. He also complains within his sole issue that his hospital records were admitted in

---

[1] See Tex. R. App. P. 47.4.

violation of his right of confrontation under the United States Constitution. Because we hold that the evidence is sufficient to support his conviction and that his hospital records were properly admitted, we affirm the trial court's judgment.

## I. Sufficiency of the Evidence

### A. Standard of Review

After the parties briefed this case on appeal, the Texas Court of Criminal Appeals held "that there is no meaningful distinction between a *Clewis* factual-sufficiency standard and a *Jackson v. Virginia* legal-sufficiency standard" and that

> the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. All other cases to the contrary, including *Clewis*, are overruled.[2]

Accordingly, we apply the *Jackson* standard of review to Appellant's sufficiency complaint. In reviewing the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[3] "Our review of 'all of the

---

[2] *... Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, at *14 (Tex. Crim. App. Oct. 6, 2010).

[3] *... Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

evidence' includes evidence that was properly and improperly admitted."[4]

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given.[5] Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.[6] The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument.[7]

## B. The Indictment and Alternative Means of Proof

The indictment charged that Appellant "did then and there drive or operate a motor vehicle in a public place, while [he] was then and there intoxicated, by reason of the introduction of alcohol, a controlled substance, a drug, or a combination of two or more of those substances in the body." The indictment did not allege a means of proof. Consequently, as the Texas Court of Criminal Appeals has explained,

---

[4] *Clayton*, 235 S.W.3d at 778.

[5] *Hardy v. State*, 281 S.W.3d 414, 421 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

[6] *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik,* 953 S.W.2d at 240.

[7] *See Curry v. State*, 30 S.W.3d 394, 404–05 (Tex. Crim. App. 2000).

Under the Texas DWI statute, intoxication may be proven in either of two ways: (1) loss of normal use of mental or physical faculties or (2) alcohol concentration in the blood, breath, or urine of 0.08 or more. The first definition is the "impairment" theory, while the second is the "per se" theory. They are not mutually exclusive, and, as long as there is evidence that would support both definitions, both theories are submitted in the jury charge.[8]

Here, both theories were submitted in the jury charge.

## C. Application to the Facts

The jury heard the following evidence. On a sunny, dry Friday before Labor Day 2008 at about 1:30 p.m., witnesses observed a Ford F-150 pickup being driven erratically on the southbound service road of State Highway 121. Traffic was moderate to heavy. The driver, later determined to be Appellant, wove in and out of traffic with jerky movements, tailgated, used his brakes in an extreme manner, and drove at inconsistent speeds. The pickup veered from the right lane in front of middle-lane driver Cara Welsh, cutting her off, and hit a Toyota Camry in the left lane "almost at a T." The Camry had been trying to enter Highway 121 via an on-ramp just past the highway's intersection with Main Street. The car and pickup spun and flew off the road to rest on the left embankment of the overpass. The crash scene was in Lewisville, Texas. The pickup was immobilized on a retaining wall with the rear wheels suspended in the air. When Appellant could not free the pickup by alternately putting it in forward and reverse gears, he exited the pickup. Witnesses

---

[8] ... *Kirsch v. State*, 306 S.W.3d 738, 743 (Tex. Crim. App. 2010) (citations omitted).

4

testified that he was bleeding profusely from his face or head. Appellant never responded to the attempts at conversation by either the driver of the car he hit or the witnesses to the crash.

After he left his pickup, Appellant crossed the busy feeder road, walked approximately three hundred yards away from the accident, and entered a liquor store and then, apparently, a convenience store. He wore a bloody shirt when he entered the store. After he left the store, Appellant crossed a service road in traffic. Drivers had to make "hard stop[s]" to avoid hitting him. A witness to the crash stopped traffic as Appellant then crossed the busy northbound service road. About 150 yards away from the service road was a construction site. Appellant disappeared briefly behind some portable toilets at the construction site. When he reappeared, Appellant was no longer wearing his bloody shirt.

City of Lewisville Officer Jeremy Reyna testified that at 1:29 p.m. on August 29, 2008, he received a radio dispatch that a crash had occurred. He also received information that one of the parties was leaving the scene. Reyna arrived at the scene about six minutes after he received the dispatch. He was driving on Highway 121 "northbound or eastbound, however you look at it, going towards The Colony" when somebody using a cell phone and standing at the entrance to a construction site on the right side of the road waved him down. He drove into the site, and another person using a cell phone pointed him toward Appellant. The construction site was in The Colony, Texas.

5

Reyna testified that Appellant "had blood on him" and appeared disoriented. Reyna asked Appellant if he was "okay" because of the lacerations on his face and called EMS. Appellant told the officer that he had hurt his head and "that he got scared." Reyna also asked how the accident had happened. Appellant told him that he had "passed through the light." Reyna then asked Appellant if he had been drinking any alcohol because, Reyna testified, he "could obviously smell the alcohol on [Appellant] and . . . his demeanor, the way he was standing and walking, led [Reyna] to believe [Appellant] may have been drinking." Reyna explained to the jury that Appellant was swaying as he stood in front of the portable toilet. At first, Appellant denied drinking, but Reyna told him to tell the truth, so then Appellant stated that he had consumed two beers.[9]

When paramedics arrived, Appellant fell asleep as he was being placed in an ambulance. Reyna testified that he believed that Appellant's falling asleep was due to intoxication rather than injuries because the paramedic did not "sound too concerned" when he was telling Appellant to wake up and because of the other factors—the way Appellant was acting and his swaying. Even though Reyna did not ask Appellant to perform field sobriety tests, Reyna believed, based on the accident, Appellant's location away from the accident site, their interactions, Appellant's falling asleep, and his admission to drinking two beers, that Appellant was legally

_____

[9] ... The record does not reveal that Appellant's motion to suppress regarding his statements and other evidence was ever presented or ruled on.

6

intoxicated.

Witnesses told Reyna that Appellant had left his shirt in a portable toilet. Reyna retrieved it. When Reyna went to the crash site, he discovered that there was no traffic light near the scene.

Officer Kyle Koiner of The Colony Police Department was dispatched to the accident scene. An inventory of the pickup revealed a "strong odor of alcoholic beverage." Six 12-ounce beer bottles were on the front floorboard; one had a small amount of beer left in it. Either all or "[p]robably all" of them were "kind of cold to the touch." Two unopened beer bottles, also "cold to the touch," were in a six-pack container in the back seat of the extended cab.

When Koiner left the accident site, he went to Trinity Medical Center in Carrollton, Texas to check on Appellant, whom the ambulance had transported there. Koiner spoke to registered nurse Mary Hyland, who, he testified, informed him that Appellant's blood had been drawn at approximately 2:25 p.m. Koiner then went to Appellant's room. The first thing Koiner noticed was "[t]he smell of a lot of alcohol, of a big alcoholic beverage coming through the room, a strong odor." The smell became stronger as Koiner moved closer to Appellant, who was lying in the bed. Appellant slurred his words and grunted when Koiner tried to converse with him. Koiner smelled alcohol on Appellant's breath and believed, based on that observation, that Appellant "maybe" had been drinking. Koiner gave the nurses what little information he had on Appellant and left the hospital.

7

Hyland, who was employed by Trinity Medical Center as an emergency room nurse when Appellant was admitted, testified that upon his arrival, Appellant smelled heavily of alcohol and bowel movement. His initial injuries were listed by EMS as lacerations to the nose and left cheek.

When asked whether she had drawn Appellant's blood, Hyland explained,

Usually, we do draw a toxic panel to see what their chemistry is, what their blood counts are, what drugs might be in their system, especially if they're not able to state their own complaints; and it looks like he was not able to state his own complaint.

She also testified that a "tox screen" for a nonresponsive patient would be a normal procedure at the hospital. Hyland testified that Appellant's medical records showed that she supervised Dave Bills, an EMT she was training, who actually performed the "vena puncture . . . using sterile technique under [Hyland's] supervision." Hyland testified that the blood was taken from the inside of Appellant's elbow at 2:15 p.m. before intravenous fluids were given to him using the same site.

Hyland admitted on cross-examination that it appeared that pages in Appellant's medical records indicated that blood was drawn at the same time as urine, 3:23 p.m., but also that for the serum alcohol test, blood was drawn at 3:31 p.m. She explained that she put her collection time, 2:15 p.m. in this case, on the label, but that she did not enter that time in the computer; another hospital employee generated the printed results. On cross-examination, Hyland answered, "Yes, sir," when asked, "This test was done for clinical purposes only, correct?" She did not

8

know whether the puncture site was cleaned with isopropyl alcohol or if it was instead cleaned with chlorhexidine.

Appellant's discharge summary contains the following diagnoses: "Nasal bone fracture, alcohol, ATOH intoxication, mild facial strain, lumbar, facial laceration, face, scalp, neck contusion." Hyland testified that Appellant's serum alcohol number was high.

Emily Kuriakose, a laboratory technologist at the hospital, testified that she analyzed Appellant's blood sample for the presence of serum alcohol, specifically, ethanol, otherwise known as drinking alcohol. To test the blood, "a chemistry analyzer that is QC and calibrated regularly" was used. Serum blood rather than whole blood was used because the manufacturer of the chemistry analyzer recommended using serum blood. Kuriakose testified that the technique used is valid and generally accepted in the scientific community and has been the subject of different peer reviews. She said that Appellant's sample contained 287 milligrams per deciliter of ethanol alcohol.

Investigator Brent Robbins of the Denton County Criminal District Attorney's Office testified that 287 milligrams of alcohol per deciliter of serum is .247 grams per 100 milliliters of ethyl alcohol in the whole blood, "an extremely high level," and slightly higher than three times the legal limit. Robbins testified that the conversion formula he used is the generally accepted way in Texas for converting from a serum result to a result that corresponds to the DWI statute. Robbins admitted that he

9

could not say what Appellant's alcohol content was at the time he was driving.

In complaining that the evidence is insufficient, Appellant contends that there is no basis for Reyna's opinion of Appellant's intoxication because no field sobriety tests were conducted, that the trial court improperly admitted Appellant's hospital records over his confrontation objection, that the State's investigator, Robbins, relied on those records to form his opinion regarding Appellant's intoxication, and that even Robbins's opinion did not address Appellant's alleged intoxication at the time of driving.

In performing a sufficiency review, we consider all evidence, whether properly or improperly admitted.[10] Considering the testimony from the witnesses and police officers about Appellant's actions before and after the wreck, his demeanor, and his odor, as well as his medical records, the testimony about his blood alcohol concentration (BAC), and the evidence of the beer and beer bottles in his pickup, and viewing all the evidence in the light most favorable to the prosecution, we must conclude that any rational trier of fact could have found the essential elements of DWI beyond a reasonable doubt. We therefore hold that the evidence is sufficient to support Appellant's conviction.

---

[10] *See Clayton*, 235 S.W.3d at 778 (providing that we consider even improperly admitted evidence in performing legal sufficiency review).

## II. Admission of Medical Records

Appellant also argues that his medical records were admitted in violation of his right to confrontation. The lab technologist who determined his BAC results testified. Thus, no violation of his right to confrontation occurred with regard to his BAC results.[11] Further, considering Appellant's global challenge to the medical records, the only evidence indicated that the medical records were created solely for treatment purposes. They were therefore not testimonial, and their admission did not violate Appellant's right to confrontation.[12] Accordingly, the trial court did not abuse its discretion by admitting Appellant's medical records. We overrule Appellant's sole issue.

## III. Conclusion

Having overruled Appellant's sole issue, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 4, 2010

---

[11] *See Crawford v. Washington*, 541 U.S. 36, 59 n.9, 124 S. Ct. 1354, 1369 n.9 (2004).

[12] *See Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2533 n.2 (2009); *Crawford*, 541 U.S. at 42, 56, 124 S. Ct. at 1359, 1367.