02-09-430-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00430-CR

 

 


 
 
 Guillermo Ortega
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 371st
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

A
jury convicted Appellant Guillermo Ortega of attempted capital murder of James
Newport and assessed his punishment at twenty years’ confinement.  The trial court
sentenced him accordingly.  In two points, Appellant challenges the sufficiency
of the evidence to support his conviction.  Because the evidence is sufficient
to support his conviction, we affirm the trial court’s
judgment.

I. 
Summary of Facts

On
May 13, 1992, Appellant and his brother Ernesto Ortega broke into and attempted
to steal a car belonging to James Newport and his wife.  Newport’s wife woke up
after hearing the sound of glass breaking and people talking.  When she
recognized the sound of her car starting and then stalling, she woke up Newport
and told him that someone was stealing the car.  Newport heard what sounded like
a car starting and ran out of his apartment with a .223 caliber assault rifle.  He
testified that once outside, he saw that the car had been backed out of the
parking space; he took a “firing stance” and told the people in the car to get
out of the car.  Newport testified that he was standing on the passenger side,
probably about thirty or forty feet away from the car.  He stated that two
males got out of the vehicle on the driver’s side, which was “opposite of
[Newport], and began firing.”

Newport
saw muzzle flashes coming from the weapons held by the two men, and the flashes
were close together.  Then, one man ran to the left and the other ran to the
right, both shooting at Newport.  He continued to see muzzle flashes from both
firearms.  He testified that he could hear the bullets, and one bullet lodged
in the apartment complex building behind where he was standing.  Newport was
certain that both men were firing directly at him.  He returned fire, aiming at
the man running to the left because the shot was better and safer.  The man running
to the left continued to shoot at Newport, and when the man stopped at the end
of the parking lot, Newport shot him, killing him.  Newport testified that
during the entire encounter, he feared for his life and was threatened with
bodily injury or death.

After
he killed that man, Newport gave chase to the second man.  Halfway across the
parking lot, Newport realized that he was out of ammunition and in his
underwear, so he went back to his original spot.  By that time, he could hear
sirens, so he removed the magazine, laid down his rifle, and waited for the
police.

Crime
Scene Investigator Joel Stephenson examined the scene and discovered Ernesto’s
body.  Near Ernesto’s body, Stephenson found a .38 caliber revolver with two
bullets discharged.  This revolver was not the weapon with which Ernesto was
shot.  In Ernesto’s pockets, Stephenson found a pair of pliers or wire cutters
and what appeared to be a broken spark plug.  He testified that spark plug
pieces are sometimes used to break out car windows.  A “dent puller” was found
under Ernesto’s body; dent pullers are commonly used to “defeat the vehicle
ignitions.”

In
examining Newport’s car, Stephenson noted that the driver’s side window had
been broken out, the steering column had been “defeated,” and the dome light
had been disconnected.  Two fingerprints lifted from the car matched the
postmortem fingerprints of Ernesto.  A palm print lifted from the car’s dome
light cover and a fingerprint from the top of the driver’s side door were
identified as belonging to Appellant.

In
the parking lot, Stephenson found eleven shell casings from Newport’s gun.  Although
no shell casings connected to a third firearm were located, there were bullet
tracks in the roof of Newport’s car with a trajectory from the car toward the
apartments.  No inspection of the apartment building for gunshot damage was
ever performed.  Newport’s wife testified to hearing three different guns
firing, including two small caliber weapons and the rifle.  She testified that it
sounded like a war zone.  Cary Gore, a neighbor, testified that he heard only
three or four small caliber shots and “two rifle shots twice.”

Kenya
Parada, Appellant’s former wife, testified at trial that shortly after
Ernesto’s death, before the couple was married, Appellant had told her that he
and Ernesto were trying to steal a car or some parts from a car when Ernesto
was killed and that both he and Ernesto had fired shots.

II.  Sufficiency of
the Evidence

After
Appellant filed his brief, the Texas Court of Criminal Appeals held that there
is no meaningful distinction between the legal sufficiency standard and the
factual sufficiency standard.[2]  Thus, the Jackson
standard, which is explained below, is the “only standard that a reviewing
court should apply in determining whether the evidence is sufficient to support
each element of a criminal offense that the State is required to prove beyond a
reasonable doubt.”[3]  We therefore apply the Jackson
standard to both of Appellant’s sufficiency points.

In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
prosecution to determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.[4] 
This standard gives full play to the responsibility of the trier of fact to
resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.[5] 
The trier of fact is the sole judge of the weight and credibility of the
evidence.[6]  Thus, when performing an
evidentiary sufficiency review, we may not re-evaluate the weight and
credibility of the evidence and substitute our judgment for that of the factfinder.[7]
 Instead, we Adetermine whether the necessary
inferences are reasonable based upon the combined and cumulative force of all
the evidence when viewed in the light most favorable to the verdict.”[8] 
We must presume that the factfinder resolved any conflicting inferences in
favor of the prosecution and defer to that resolution.[9] 
The standard of review is the same for direct and circumstantial evidence
cases; circumstantial evidence is as probative as direct evidence in
establishing the guilt of an actor.[10]  But the sufficiency of
the evidence in a criminal case is not determined by a no-evidence standard.[11]

In
determining the sufficiency of the evidence to show an appellant=s
intent, and faced with a record that supports conflicting inferences, we “must
presume—even if it does not affirmatively appear in the record—that the trier
of fact resolved any such conflict in favor of the prosecution, and must defer
to that resolution.”[12]

Appellant
was charged by indictment with attempted capital murder in the course of
robbery or of burglary of a motor vehicle.  The jury charge instructed the jury
that they could convict him of attempted capital murder if they found him
guilty as a principal or as a party.  Oddly, even though Appellant was not
charged with the offense of criminal conspiracy under section 15.02 of the penal
code, a second-degree offense in this case,[13] the jury was also instructed
that they could convict Appellant of attempted capital murder if they found him
guilty of criminal conspiracy, and the jury instruction tracked the language of
section 15.02.[14]  Section 15.02 of the
penal code provides,

a) A person commits
criminal conspiracy if, with intent that a felony be committed:

(1) he agrees with
one or more persons that they or one or more of them engage in conduct that
would constitute the offense; and

(2) he or one or more
of them performs an overt act in pursuance of the agreement.

(b) An agreement
constituting a conspiracy may be inferred from acts of the parties.

(c) It is no defense
to prosecution for criminal conspiracy that:

(1) one or more of
the coconspirators is not criminally responsible for the object offense;

(2) one or more of
the coconspirators has been acquitted, so long as two or more coconspirators
have not been acquitted;

(3) one or more of
the coconspirators has not been prosecuted or convicted, has been convicted of
a different offense, or is immune from prosecution;

(4) the actor belongs
to a class of persons that by definition of the object offense is legally
incapable of committing the object offense in an individual capacity; or

(5) the object
offense was actually committed.

(d) An offense under
this section is one category lower than the most serious felony that is the
object of the conspiracy, and if the most serious felony that is the object of
the conspiracy is a state jail felony, the offense is a Class A misdemeanor.[15]

The
sufficiency of the evidence should be measured by the elements of the offense as
defined by the hypothetically correct jury charge for the case, not the charge
actually given.[16]  Such a charge is one
that accurately sets out the law, is authorized by the indictment, does not
unnecessarily restrict the State=s
theories of liability, and adequately describes the particular offense for
which the defendant was tried.[17]  However, we may not
affirm a conviction based on legal or factual grounds that were not submitted
to the jury.[18]  The law as authorized
by the indictment means the statutory elements of the charged offense as
modified by the factual details and legal theories contained in the charging
instrument.[19]

Appellant
does not challenge the indictment, but he does challenge the sufficiency of the
evidence to convict him.

When
the jury is authorized to convict on any one of several theories or methods of
commission of the same offense (for example, two different statutory
definitions of the same offense) and returns a general verdict of guilt, it
does not matter that the evidence is insufficient to sustain one or more of the
theories, so long as the evidence is sufficient to sustain conviction under at
least one theory.[20]

In
the case now before this court, however, Appellant was not charged with
criminal conspiracy in the indictment, but the jury was charged that they must
convict Appellant of attempted capital murder whether they found him guilty of
attempted capital murder as a principal or as a party or they found he had
entered into a conspiracy to commit capital murder.[21] 
Specifically, the jury was charged to convict if they found Appellant had 

entered into a
conspiracy with another to commit the felony offense of burglary of a motor
vehicle and that on or about the 13th day of May, 1992, in Tarrant
County, Texas, in an attempt to carry out this agreement, if any, Ernesto
Ortega did then and there, with the specific intent to commit the offense of
murder of James Newport, intentionally shoot a firearm at James Newport during
the course of committing or attempting to commit burglary of a motor vehicle of
James Newport, which amounted to more than mere preparation that tended but
failed to effect the commission of the offense intended and that such offense
was committed in furtherance of the unlawful purpose to commit burglary and was
an offense that should have been anticipated as a result of the carrying out of
the agreement.

The
defendant in this case was Appellant, not Ernesto.  There was a similar
instruction with robbery as the subject of the conspiracy.  The jury was
instructed in the conspiracy instruction that they must find an agreement.  An
agreement is not an element of attempted capital murder, and the State is not
required to prove an agreement to prove a defendant’s guilt of attempted
capital murder, either as a principal or as a party.  To instruct the jury that
an agreement is a necessary element of the offense either improperly increases
the State’s burden or allows the jury to convict Appellant of conspiracy, an
offense of which he was not accused and for which he was not indicted.

Appellant
argues that the evidence is insufficient to prove attempted capital murder, as
opposed to robbery or burglary, because there is no evidence that he knew that Ernesto
had a gun and no evidence that Appellant fired any shots.  Appellant apparently
argues that there is no evidence of an agreement or meeting of the minds
regarding using a firearm and no evidence that he, as opposed to Ernesto, fired
a weapon.  Although the trial court charged the jury to convict under the
conspiracy statute, which requires an agreement,[22]
an agreement is not an element of capital murder, attempted capital murder,
burglary, or robbery.  There is no evidence of an agreement between Ernesto and
Appellant.  There is evidence that both participated in entering the vehicle
and that one of the brothers attempted to get the vehicle running.  There is
evidence that Appellant touched the interior dome light cover of the vehicle. 
There is evidence that Ernesto had the tools to enter with him.  But the State
was never required to prove an agreement to prove Appellant guilty of attempted
capital murder.[23]

The
State was required to prove “the specific intent to commit the offense of
murder,”[24] but not an agreement, in
order to prove attempted capital murder.  That intent may be inferred from any
act on the part of Appellant, acting with intent to promote or assist the
commission of attempted capital murder, or to solicit, encourage, direct, aid,
or attempt Ernesto to commit capital murder.  Here, there is evidence that Appellant
participated in robbery and burglary and that in the course of committing those
offenses, he fired a firearm at Newport because Newport testified that he saw
muzzle flashes not only from Ernesto’s location but also from Appellant’s
location.  This evidence is sufficient to prove those elements of the offense
despite the absence of evidence of an agreement.

Appellant
was not charged by indictment with conspiracy, there was no direct evidence of
conspiracy, and that instruction should not have been submitted to the jury. 
But the correct jury charge would have allowed the jury to convict only of the
offense alleged in the indictment and properly proved by the evidence—attempted
capital murder, or a lesser included offense.[25]  Conspiracy is not a
lesser included offense because it requires proof of an additional element:  an
agreement.  We therefore hold that, under the appropriate standard, the
evidence was sufficient to support Appellant’s conviction of attempted capital
murder as actually alleged in the indictment.  Because the jury returned a
general verdict, we overrule Appellant’s points.

III. 
Conclusion

Having
overruled Appellant’s points, we affirm the trial court’s judgment.

 

 

LEE ANN DAUPHINOT

JUSTICE

PANEL: 
DAUPHINOT,
WALKER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  June 9, 2011









[1]See Tex. R. App. P. 47.4.





[2]Brooks v. State,
323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling Clewis v. State,
922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)).





[3]Id.





[4]Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).





[5]Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.





[6]See Tex. Code Crim.
Proc. Ann. art. 38.04 (West 1979); Brown v. State, 270 S.W.3d 564, 568
(Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075 (2009).





[7]Williams v. State,
235 S.W.3d 742, 750 (Tex. Crim. App. 2007).





[8]Hooper v. State,
214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).





[9]Jackson, 443 U.S.
at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.





[10]Clayton, 235
S.W.3d at 778; Hooper, 214 S.W.3d at 13.





[11]Butler v. State, 769
S.W.2d 234, 239 (Tex. Crim. App. 1989), overruled
on other grounds by Geesa v. State, 820 S.W.2d 154, 161 (Tex. Crim.
App. 1991), overruled on
other grounds by Paulson v. State, 28 S.W.3d 570, 571 (Tex. Crim.
App. 2000).





[12]Matson v. State,
819 S.W.2d 839, 846 (Tex. Crim. App. 1991).





[13]See Tex. Penal
Code Ann. § 15.02 (West 2011).





[14]See id.





[15]Id.





[16]Hardy v. State,
281 S.W.3d 414, 421 (Tex. Crim. App. 2009); Malik v. State, 953 S.W.2d
234, 240 (Tex. Crim. App. 1997).





[17]Villarreal v. State,
286 S.W.3d 321, 327 (Tex. Crim. App.), cert. denied, 130 S. Ct. 515
(2009); Malik, 953 S.W.2d at 240.





[18]Malik, 953 S.W.2d
at 238 n.3.





[19]See Curry v. State,
30 S.W.3d 394, 404–05 (Tex. Crim. App. 2000).





[20]Grissam v. State,
267 S.W.3d 39, 41 (Tex. Crim. App. 2008); Swearingen v. State, 101
S.W.3d 89, 95 (Tex. Crim. App. 2003) (citing Rabbani v. State, 847
S.W.2d 555, 558–59 (Tex. Crim. App. 1992), cert. denied, 509 U.S. 926
(1993)); see also Jefferson v. State, 189 S.W.3d 305, 311–13 (Tex. Crim.
App.) (analyzing whether a statute that does not require a unanimous verdict as
to different manner and means of committing the same offense violates due
process), cert. denied, 549 U.S. 957 (2006).





[21]See Tex. Penal
Code Ann. § 15.02.





[22]See id. §
15.02(a).





[23]See Pereira v. United
States, 347 U.S. 1, 11, 74 S. Ct. 358, 364 (1954); Ex parte Brosky,
863 S.W.2d 783, 784, 788 (Tex. App.—Fort Worth 1993, no pet.).





[24]See Tex. Penal
Code Ann. § 15.01 (West 2011) (defining criminal attempt), id. § 19.03
(defining capital murder).





[25]See Malik, 953
S.W.2d at 240.