NO. 07-11-00253-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 16, 2012

ALFREDO ANZALDUA, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2010-427,388; HONORABLE BRADLEY S. UNDERWOOD, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Alfredo Anzaldua, was convicted of assault,[1] a third degree felony,[2] and sentenced to serve 10 years in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ).  In six issues, appellant contends that: 1) the evidence was insufficient to prove that the assault did not constitute defensive measures taken to protect appellant; 2) the trial court committed reversible error by not requiring the State to defeat a claim of self-defense; 3) appellant suffered egregious harm because the

---

[1] See TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2011).

[2] See id. § 22.01(b)(2) (West.

court's charge did not require proof that the alleged assault did not consist of defensive measures taken to protect oneself; 4) the trial court erred by not granting appellant the proper jail time credit; and 5) the trial court erred by requiring appellant to pay attorney's fees for his court-appointed attorney. As modified, we will affirm the judgment entered by the trial court.

Factual and Procedural Background

On April 15, 2010, the Lubbock Police Department (LPD) dispatch office received a 911 call regarding an on-going assault. The first 911 call came from a cell phone which was identified as belonging to the victim, Kristal Santiago. Within a matter of minutes, the dispatch office received a second 911 call from Santiago's mother, Maria Garcia, regarding the same assault. The recordings of both 911 calls were played for the jury.

Garcia testified that when she arrived at the scene, The Villa Motel, she observed Santiago's feet hanging out of the driver's side door of Santiago's car. Further, she saw appellant choking Santiago. Santiago called out for her mother but did not appear to have any breath.

As a result of the 911 calls, the LPD dispatched Officer Rosa Cox to the scene. When Cox arrived, she initially observed a woman, later identified as Garcia, screaming and yelling at someone in a car. Cox observed Santiago's feet sticking out of the driver's side door, and appellant behind Santiago with his arm under her throat and seemingly pulling back on Santiago. Cox observed that Santiago's face was covered in "snot," she was sweating profusely, and her eyes appeared to be "big, bubbly, and red."

2

Further, Cox heard Santiago "do like a gargle, gasping for air type noise." Cox was able to eventually get appellant to release Santiago. Appellant was then taken into custody. Santiago told Cox that appellant was hitting her and choking her. Cox then released Santiago to the medical personnel who had arrived on the scene.

At trial, Santiago testified that she and appellant had been dating and living together prior to the incident. However, she denied that appellant had been choking her on the occasion in question. On that evening in question, Santiago and appellant had been engaged in a loud argument regarding appellant's apparent lack of fidelity. Santiago testified that, she went back to the motel and, when appellant approached the car, she locked herself in. Appellant went to the back of the car and removed a plastic sheet that was being utilized as a rear window, and crawled into the car. Santiago testified that when appellant came through the back of the car toward the front seat, she struck him. Santiago contended that, although appellant struck her a number of times, he never choked her. As a result of her testimony, the State was allowed to confront her with a number of telephone conversations she had with appellant while he was in jail. In these conversations, Santiago continually referred to appellant's attempt to choke her.

At the conclusion of the testimony, the trial court prepared the court's charge. The charge presented to trial counsel did not contain a self-defense charge and none was requested, neither did appellant object to the failure of the charge to contain an instruction on self-defense. The jury subsequently convicted appellant and, after a punishment hearing conducted by the trial court, he was sentenced to 10 years confinement in the ID-TDCJ.

3

Appellant has presented six issues on appeal. His first three issues deal with the overall subject of self-defense. The first of these issues contends that the State failed to prove a statutory element in its case, that the assault in question did not consist of defensive measures taken to protect oneself. The second issue deals with self-defense under the Texas Penal Code and the insufficiency of the State's evidence to disprove self-defense. The third issue contends that, because the court's charge did not include a charge regarding defensive measures taken to protect oneself, appellant has suffered egregious harm. The fourth issue contends appellant did not receive the proper jail time credit pronounced orally by the trial court. The last two issues deal with appointed attorney's fees. We will affirm the judgment of the trial court as hereinafter modified.

Sufficiency of the Evidence

Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Brooks v. State, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a fact finder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." Brooks, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by Jackson." Id.

4

(Cochran, J., concurring). When reviewing all of the evidence under the <u>Jackson</u> standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. <u>See</u> <u>id.</u> at 906, 907 n.26 (discussing Judge Cochran's dissenting opinion in <u>Watson v. State</u>, 204 S.W.3d 404, 448–50 (Tex.Crim.App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." <u>Id.</u> at 899.

The sufficiency standard set forth in <u>Jackson</u> is measured against a hypothetically correct jury charge. <u>See</u> <u>Malik v. State</u>, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). Such a charge is one that accurately sets forth the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. <u>Id</u>. The "'law' as 'authorized by the indictment' must be the statutory elements" of the offense charged "as modified by the charging instrument." <u>Curry v. State</u>, 30 S.W.3d 394, 404 (Tex.Crim.App. 2000).

<u>Analysis of Appellant's First Issue Regarding Sufficiency of the Evidence</u>

Appellant was charged with assault of a person with whom he had a dating relationship. The elements of this offense are:

1) Appellant;

2) intentionally, knowingly, or recklessly;

3) caused bodily injury;

5

4) to Kristal Santiago;

5) a person with whom appellant had a dating relationship;

6) by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of Kristal Santiago;

7) by applying pressure to the throat or neck of Kristal Santiago.

See TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2).[3]

The Penal Code does not contain a definition of dating relationship. Rather, section 22.01(b)(2) refers to section 71.0021(b) of the Texas Family Code. This section of the Family Code defines dating relationship as:

> For purposes of this title, "dating relationship" means a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature.

See TEX. FAM. CODE ANN. § 71.0021(b) (West Supp. 2011). The section goes on to describe the considerations relevant to the determination whether a dating relationship exists. Id. No one has denied that the appellant and Santiago were in a dating relationship.

Appellant's first issue is based upon the contention that section 22.01(b)(2)'s reference to section 71.0021(b) of the Texas Family Code to define dating relationship must be read to also include the requirement that the State negate defensive measures

_____

[3] Further reference to the Texas Penal Code will be by reference to "§ ___," or "section ___."

6

taken to protect oneself that is found in section 71.0021(a) of the Family Code. See Tex. Fam. Code Ann. § 71.0021(a). According to appellant's theory, since the Penal Code provision looks to the Texas Family Code to provide the definition of dating relationship, the entire provision referred to must be included in the offense of assault. We disagree with appellant's contention.

The question before us is one of statutory construction of section 22.01(b)(2). When the legislature enacted the section at issue, did it intend to import all of section 71.0021 into section 22.01(b)(2)? In making this determination, we are instructed to focus on the literal text to determine the objective meaning of that text at the time of its enactment. See Spence v. State, 325 S.W.3d 646, 650 (Tex.Crim.App. 2010). In doing so, we read the statute in question in context and construe it according to the rules of grammar and common usage. See Tapps v. State, 294 S.W.3d 175, 177 (Tex.Crim.App. 2009). Further, we presume the legislature meant what it said. See Hardy v. State, 281 S.W.3d 414, 422 (Tex.Crim.App. 2009).

Section 22.01(b) states,

> An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against:
>
> (2) a person whose relationship to or association with the defendant is described by Section 71.0021(b), . . . Family Code;

§ 22.01(b). The statute makes no reference to section 71.0021(a). We cannot assume that such an omission was a mistake on the part of the legislature. See Hardy, 281 S.W.3d at 422. The plain meaning of the statute is that the offense of assault, as

7

defined in section 22.01(a)(1), is a class A misdemeanor unless it is directed at a class of individuals described in section 22.01(b). One of those classes is that described by section 71.0021(b) of the Family Code. "Describe" is defined as "to represent or give an account of in words." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 343 (1987). The proper grammatical use of "described" in the penal statute is to direct the reader to the location where those protected persons are described. It is only for the purpose of this definition that the legislature included the reference to section 71.0021(b) of the Family Code.

When we place the phrase at issue within the context of what the Penal Code section was attempting to do, which is to define those against whom an assault would be a third degree felony, the plain meaning of the statute is clear. It is definitional only, and to include more goes against the plain meaning of the words used. See Tapps, 294 S.W.3d at 177. Accordingly, we find that the penal statute at issue did not import subsection (a) of section 71.0021 into the elements of the offense charged against appellant. Inasmuch as appellant's first issue is premised on the contention that the defensive measures portion of section 71.0021(a) of the Texas Family Code is an element of the offense the State had to prove, and we have found otherwise, we will overrule appellant's first issue.

Analysis of Appellant's Second Issue Regarding Sufficiency of the Evidence

By his second issue, appellant contends that, even if we find that section 71.0021(a) of the Texas Family Code was not an element of the offense, the State failed to disprove self-defense. Essentially, appellant now argues that the evidence

8

raised self-defense, as embodied in section 9.31(a) of the Penal Code. See § 9.31(a) (West 2011).

Although appellant did not testify, Santiago testified that she initially struck appellant as he came toward her from the rear of the vehicle, and that she subsequently pinned him against the seat with her full body weight to prevent him from striking her. In response to a question from the State's attorney, Santiago stated appellant did tell her to get off of him because he could not breathe. Appellant never requested a charge on self-defense and did not object to the court's charge that did not contain a charge on self-defense. Appellant's primary defensive theory presented, through medical personnel and records, was that he did not choke Santiago. During final arguments, appellant's trial counsel argued that the State had failed to prove that appellant had intentionally, knowingly, or recklessly impeded the normal breathing or circulation of the blood of Santiago.

Section 9.31(a) of the Penal Code provides, in relevant part:

> (a) Except as provided in Subsection (b), a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force.

See id. The initial question we face is whether the evidence raises the issue of self-defense. We are mindful that evidence from any source may raise the defensive issue of self-defense. See Mendoza v. State, 88 S.W.3d 236, 239 (Tex.Crim.App. 2002). Further, appellant is entitled to such a charge regardless of whether the evidence is weak, contradicted, or otherwise impeached. See Ferrel v. State, 55 S.W.3d 586, 591

9

(Tex.Crim.App. 2001). However, if the evidence, viewed in the light most favorable to the appellant, does not establish self-defense, appellant is not entitled to any instruction. See id. Finally, a defensive instruction is appropriate when the appellant's evidence admits the elements of the offense but interposes justification to excuse the otherwise criminal conduct. See Shaw v. State, 243 S.W.3d 647, 659 (Tex.Crim.App. 2007).

When the law regarding self-defense is applied to the facts of this case, it becomes apparent that appellant denied committing the offense. Simply put, appellant contended throughout that he did not do what was alleged. Accordingly, appellant cannot now avail himself of the defense of self-defense after the fact of the trial. To hold otherwise would be to place the trial court in the untenable position of having to second guess the defensive strategy of appellant and his trial counsel. See Posey v. State, 966 S.W.2d 57, 63 (Tex.Crim.App. 1998). For these reasons, self-defense was not before the jury and the State did not have any burden of persuasion regarding the matter. Accordingly, appellant's second issue is overruled.

Alleged Charge Error

Appellant's third issue contends that he suffered egregious harm due to the trial court's failure to require proof that the alleged assault did not consist of defensive measures taken to protect oneself. This is simply a restatement of appellant's first issue in the context of charge error. We have already held that the language regarding defensive measures taken to protect oneself in section 71.0021(a) of the Texas Family Code is not an element of the offense. Accordingly, we do not need to address appellant's contention. Appellant's third issue is overruled.

Jail Time Credit

Appellant's fourth issue contends that appellant did not receive all appropriate jail time credit. Appellant contends that he has been denied credit for seven days from January 12 through January 18, 2011. When pronouncing sentence on appellant, the trial court made the following statement:

> You're remanded to jail until the Sheriff can carry out the directions of this sentence. You're to receive credit for all applicable jail time, which apparently is from the date of the offense to today. He was arrested that day?

Appellant's trial counsel answered the question, "I assume so, Your Honor." However, the judgment reflects that appellant is due credit for jail time from April 15, 2010 to January 11, 2011, and from January 19, 2011 until present date. Thus, appellant's issue before this Court is the missing seven days.

Appellant is correct in his proposition that, when the oral pronouncement of sentence varies from the written judgment, the oral pronouncement of sentence controls. Coffey v. State, 979 S.W.2d 326, 328 (Tex.Crim.App. 1998). The real question here is, was the phrase "which apparently is from the date of the offense to today" part of the pronouncement of sentence. This is not as certain as appellant would have us believe, especially as that phrase was followed with a question to trial counsel regarding the date of appellant's arrest. Trial counsel's answer makes this uncertainty more apparent: "I assume so, Your Honor." This was simply a colloquy between trial counsel and the trial court in an effort to ascertain the appropriate jail time credit. The operative portion of the oral pronouncement is, "You're to receive credit for all

11

applicable jail time." Appellant does not contend that he was incarcerated during the period of January 12 through January 18, 2011. Accordingly, we find no variance between the oral pronouncement of appellant's sentence and the written judgment. Appellant's fourth issue is overruled.

## Appointed Attorney's Fees

The State has conceded that there is no evidence to support ordering appellant to repay the appointed attorney's fees as ordered in the judgment. Accordingly, the judgment is modified to strike the order for payment of $629.50 in attorney's fees. Having ordered the attorney's fees portion of the judgment modified, appellant's sixth issue is moot.

## Conclusion

Having ordered the judgment to be modified and having overruled appellant's other issues, we affirm the trial court's judgment as reformed.

Mackey K. Hancock
Justice

Do not publish.