Opinion issued July 18, 2023



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00351-CR

————————————

## JAMMIE KATHRIN KELLEY, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

### On Appeal from the 212th District Court
### Galveston County, Texas
### Trial Court Case No. 21-CR-0506

---

## MEMORANDUM OPINION

Jammie Kathrin Kelley appeals her conviction for injury to a child. Kelley complains that there was (1) insufficient evidence to support her conviction and (2) reversible jury charge error. Because the evidence was sufficient to convict Kelley and the jury charge error was not egregiously harmful, we affirm.

## Background

Kelley is the grandmother of C.H., who was ten years old at the time of the offense. C.H. was living with his mother, S. Henderson, in the Dallas area. Around February 2021, Henderson contracted COVID and could not care for C.H., so he went to stay with Kelley and her husband at their apartment in Galveston. By mid-February, Kelley and her husband decided that C.H. needed to return to Dallas because Kelley was struggling to look after him. The morning of the incident, Kelley ran some errands before she planned to take C.H. to Dallas. She took C.H. with her to shop for groceries. At the store, C.H. became angry and disobeyed Kelley. On the drive back to Kelley's apartment, C.H. kicked the dashboard, hit the car window, tried to break a video screen in the car, and tried to put the car in park while Kelley was driving.

Upon returning to the apartment, Kelley told C.H. to bring the groceries inside and walked toward her apartment. When she turned to look back at C.H., she noticed that the groceries were strewn across the ground. Kelley became angry and yelled at C.H. to pick the groceries up. A neighbor, A. Khemlov, heard the yelling, looked out his window, and began videorecording.

The video shows Kelley yelling at C.H. and grabbing his arm, chest, and shirt. C.H. responds by touching his chest and saying, "ow." Then, Kelley grabs C.H.'s shirt again as he moves away. While backing away, C.H. steps over a curb onto a

2

grassy area before Kelley reaches for his shirt again. C.H. falls onto the grass, and Kelley drags him by his shirt toward the curb while ordering him to pick up the groceries. C.H. is picking up items while being yelled at before they both begin walking toward the apartment building. Kelley yells at C.H. to pick up another item, and he is seen bending down then standing up before Kelley swings her arm at his head and appears to make contact. He ends up on the ground, after the swing, when Kelley then kicks him. Kelley continues to yell at C.H. to pick up items on the ground before picking some items up herself, walking away, and telling C.H., "come get your shit so you can go home." As the video ends, C.H. looks at his elbow and exclaims "oh my God" before following Kelley.

Soon after, Galveston Police Department Officer C. Wilson arrived at Kelley's apartment. Officer Wilson could hear yelling from outside the apartment and saw what appeared to be fresh droplets of blood at the base of the door. Upon entering the apartment, Kelley informed him that she had "a child bleeding" and that there was blood on the sofa from the parking lot incident. Officer Wilson interviewed Kelley and C.H. While interviewing C.H., Officer Wilson saw an abrasion on his elbow. Kelley was arrested and taken into custody.

Kelley was charged with third-degree felony injury to a child, pleaded not guilty, and went to trial. During the guilt-innocence phase of trial, the jury heard

testimony from Officer Wilson, Khemlov, and Kelley. The jury convicted Kelley and sentenced her to three years' confinement.

## Sufficiency of the Evidence

Kelley contends that the evidence could not support her conviction because there was no evidence that: (1) she intentionally or knowingly caused bodily injury to C.H. by striking him with her hand or foot, or by causing him to strike the ground; and (2) her justification defense was negated. The State responds that the video evidence and eyewitness testimony are enough to support Kelley's conviction.

### A. Standard of Review

We review the legal sufficiency of the evidence by considering all the evidence, in the light most favorable to the jury's verdict, to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We defer to the factfinder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. Our role is that of a due process safeguard, and we consider only whether the factfinder reached a rational decision. *See Malbrough v. State*, 612 S.W.3d 537, 559 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd); *see also Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (the

4

reviewing court's role "is restricted to guarding against the rare occurrence when a fact finder does not act rationally").

Sufficiency of the evidence should be measured by the elements of the offense as defined by a hypothetically correct jury charge. *See Hardy v. State*, 281 S.W.3d 414, 421 (Tex. Crim. App. 2009). "In reviewing the legal sufficiency of the evidence, a court must consider both direct and circumstantial evidence, and any reasonable inferences that may be drawn from the evidence." *Malbrough*, 612 S.W.3d at 559 (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)). Circumstantial and direct evidence are equally probative in establishing the defendant's guilt, and circumstantial evidence alone can be sufficient. *Malbrough*, 612 S.W.3d at 559 (citing *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). "For evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with a defendant's guilt." *Id.* The appellate court "considers only whether the inferences necessary to establish guilt are reasonable based on the cumulative force of all the evidence when considered in the light most favorable to the jury's verdict." *Id.* (citing *Wise*, 364 S.W.3d at 903; *Hooper*, 214 S.W.3d at 13). We review factual sufficiency of the evidence under the same standard of review as that for legal sufficiency. *See Edwards v. State*, 497 S.W.3d 147, 156 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

5

**B.     Analysis**

Kelley was charged with third-degree felony injury to a child under the Texas Penal Code, which makes it an offense to "intentionally [or] knowingly . . . by act . . . cause[] to a child . . . bodily injury." TEX. PENAL CODE §22.04(a)(3), (f). Injury-to-a-child offenses under Section 22.04 are "result-oriented" and "[require] a mental state that relates not to the specific conduct but to the result of that conduct." *Williams*, 235 S.W.3d at 750.

"A person acts intentionally, or with intent, with respect . . . to a result of [her] conduct when it is [her] conscious objective or desire to . . . cause the result." TEX. PENAL CODE § 6.03(a). "A person acts knowingly, or with knowledge, with respect to a result of [her] conduct when [she] is aware that [her] conduct is reasonably certain to cause the result." *Id.* § 6.03(b). Mental culpability may be inferred from a defendant's conduct and the surrounding facts. *Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998). The State had to prove Kelley intentionally or knowingly caused bodily injury to C.H. by striking him with her hand or foot, or by causing C.H. to strike the ground.

Kelley contends that the only injury C.H. received was not serious, it resulted from an accident, and that her actions were justified under the law. The neighbor who recorded the video, Khmelov, testified that he had heard a woman shouting outside for a few minutes. Khemlov looked outside and saw a "disturbing" argument

6

between a boy and a woman he assumed was the boy's grandmother. Khemlov's video of the incident shows Kelley's physical and verbal interactions with C.H. After Khemlov recorded the video, he called the police because he was uncomfortable with the situation and believed it was child abuse.

Next, Officer Wilson testified that when he arrived at Kelley's apartment, he saw blood droplets at the door and heard yelling. While inside, Kelley told Officer Wilson that she had a bleeding child and explained that the stains on the sofa were blood from the incident that had just occurred. While interviewing C.H., Officer Wilson noticed an injury on C.H.'s elbow and documented it.

Lastly, Kelley testified about the incident and how she feared C.H. She described C.H. as "oppositional," "emotionally expressive," "combustible," and "scary." She explained that he can become aggressive for no reason and will bite, spit, hit, and kick. Kelley explained that the night before the incident, C.H. was upset and had damaged the closet door in their apartment by slamming it. She described how, on the day of the incident, C.H. was angry and would not obey her, slammed her car door, threw things, kicked the dashboard, and tried to put her car in park while she was driving. Turning to the incident, Kelley testified that after arriving at her apartment's parking lot, she told C.H. to bring the groceries inside. As Kelley walked toward her apartment, she turned and saw groceries on the ground. She told C.H. to pick them up, but he refused. She was scared that C.H. would physically

7

assault her. Kelley denied swinging at C.H. Instead, she described it as "snatching" him. And when she went to snatch him, he ducked. While Kelley admitted that she kicked C.H., she explained that she did so defensively to kick his legs away from her after he kicked her.

As for Kelley's argument that her actions were justified, she relies on Texas Penal Code Section 9.61: "[t]he use of force, but not deadly force, against a child younger than 18 years is justified: (1) if the actor is . . . acting in loco parentis to the child; and (2) when and to the degree the actor reasonably believes the force is necessary to discipline the child or to safeguard or promote his welfare." TEX. PENAL CODE § 9.61(a). *In loco parentis* includes a grandparent. *Id.* § 9.61(b). A "reasonable belief" is "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42). Kelley was acting *in loco parentis* to C.H. *See id.* § 9.61(b). Kelley does not dispute that she grabbed and kicked C.H. but that she reasonably believed the force was necessary to discipline him.

The jury was not required to believe any part of Kelley's testimony. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012) (jury is the sole judge of witness credibility and of the weight given to any evidence). Viewing the evidence in the light most favorable to the verdict, we conclude that the jury could reasonably find, beyond a reasonable doubt, that Kelley intentionally or knowingly caused bodily injury to C.H. by striking him with her hand or foot, or by causing C.H. to

8

strike the ground. *Williams*, 235 S.W.3d at 750; *See Bolton v. State*, 619 S.W.2d 166, 167 (Tex. Crim. App. 1981) (evidence of cut on arm sufficient to show bodily injury); *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012) ("Any physical pain, however minor, will suffice to establish bodily injury."); *Aguilar v. State*, 263 S.W.3d 430, 434 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (factfinder may infer that victim felt or suffered physical pain). And we conclude, viewing the evidence in the light most favorable to the verdict, that there was also enough evidence for the jury to have found against Kelley on the defensive issue she raised. *See Adelman v. State*, 828 S.W.2d 418, 421–22 (Tex. Crim. App. 1992); *see also Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (when jury finds defendant guilty, there is implicit finding against defensive theory).

We overrule Kelley's first issue.

## Jury Charge Error

Kelley contends that the trial court gave an overly broad definition of "intentionally" in the jury charge, which was egregiously harmful error. The State responds that Kelley was not egregiously harmed by any jury charge error because the application paragraph correctly instructed the jury.

### A.    Standard of Review

The trial court must give the jury a written charge that sets forth the applicable law in the case. *See* TEX. CODE CRIM. PROC. art. 36.14. When reviewing for jury

charge error, we apply a two-step procedure. *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing test procedure from *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). Step one requires the appellate court to determine whether there is error in the charge. *Id.* If there is error, the appellate court must conduct a harm analysis. *Celis v. State*, 416 S.W.3d 419, 423 (Tex. Crim. App. 2013). If there was error and a defendant timely objected, then reversal is required if the defendant was harmed. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). But if the defendant did not timely object, "then reversal is required only if the error was so egregious and created such harm that the defendant did not have a fair and impartial trial." *Id.*

## B.     Analysis

Kelley did not object to the jury charge, so reversal is required only if there was error and it was egregiously harmful. *Id.* Texas Penal Code Section 6.03(a) defines the mental state of "intentionally" as "[a] person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." But Texas Penal Code Section 22.04(a) applies intent to the result, bodily injury to a child, not to engaging in the conduct. *See id.* § 22.04(a)(3).

The trial court's instruction stated, "[a] person acts intentionally, or with intent, with respect to the result of her conduct when it is her conscious objective or

desire to engage in the conduct or cause the result." Because the jury charge included the Texas Penal Code's full definition of the term "intentionally," the trial court erred. *See Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015) (trial court errs when it fails to limit language on applicable culpable mental states to appropriate conduct).

As for whether Kelley was egregiously harmed, we consider the entire jury charge, the state of the evidence, the parties' arguments, and any other relevant information. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). Definitions in a charge must be examined in the context in which they appear and not in isolation. *Herrera v. State*, 526 S.W.3d 800, 806 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (citing *Turner v. State*, 805 S.W.2d 423, 430–31 (Tex. Crim. App. 1991)). The definitions in the jury charge's abstract paragraphs act as a glossary to help the jury understand concepts and terms used in the application paragraphs of the charge. *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). The jury charge's application paragraph applies the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment. *See Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012).

Here, the application paragraph states:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 14th day of February, A.D., 2021, in Galveston County, Texas, the Defendant, Jammie Kathrin Kelley, did then and there intentionally or knowingly cause bodily injury to [C.H.], a child

fourteen (14) years of age or younger, by striking said [C.H.] with Defendant's hand or foot or causing [C.H.] to strike the ground, then you will find the Defendant guilty of the offense of Injury to a Child. Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, then you will acquit the Defendant and say by your verdict "not guilty."

Kelley does not dispute that the application paragraph correctly tracked the indictment and Texas Penal Code Section 22.04. *See* TEX. PENAL CODE §22.04(a)(3). The application paragraph limited the definition of intentionally to the result as required by Section 22.04. *See id.* Because the application paragraph correctly instructed the jury, there was not egregious harm. *See Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) ("Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious."); *Williams v. State*, 226 S.W.3d 611, 618–19 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (defendant not egregiously harmed when abstract paragraph of charge included superfluous definition of recklessly).

We overrule Kelley's final issue.

## Conclusion

We affirm the judgment of the trial court.

Sarah Beth Landau
Justice

Panel consists of Justices Landau, Countiss, and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).